[No. G039984. Fourth Dist., Div. Three. Feb. 24, 2010.]

WILHELMINA DANIELS, Plaintiff and Appellant, v.
JACK H. ROBBINS et al., Defendants and Respondents.

CounSEL

Gray Duffy, John J. Duffy, Frank J. Ozello and Brian W. Ludeke for Plaintiff and Appellant.

Hinshaw & Culbertson, Filomena E. Meyer, Frances M. O'Meara and Desmond J. Hinds for Defendants and Respondents.

OPINION

**IKOLA, J.**—Plaintiff Wilhelmina Daniels appeals an order granting a Code of Civil Procedure section 425.16 (anti-SLAPP) motion.[1] Wilhelmina[2] alleges various defendants committed the torts of malicious prosecution, abuse of process, negligence, and intentional infliction of emotional distress by filing and pursuing claims against her in a prior lawsuit.

The prior lawsuit was dismissed following the trial court's grant of terminating sanctions against James T. Young, the plaintiff in the prior lawsuit. The law firm Quinlivan Wexler LLP, Attorney Patrick C. Quinlivan, and Attorney Jack H. Robbins (collectively, the Quinlivan Attorneys) represented Young in the underlying action. Young and the Quinlivan Attorneys are defendants in this action. The court granted the Quinlivan Attorneys' anti-SLAPP motion and they are respondents to this appeal; Young is not a party to this appeal.

We affirm the order granting the anti-SLAPP motion because Wilhelmina failed to make the required showing she would probably prevail on her claims. With respect to the malicious prosecution cause of action, we affirm on the ground Wilhelmina failed to make a prima facie case of malice against the Quinlivan Attorneys.

We publish this opinion because of our analysis of (1) the favorable termination prong of an action for malicious prosecution and our discussion of *Zeavin v. Lee* (1982) 136 Cal.App.3d 766 [186 Cal.Rptr. 545] (*Zeavin*);

_____

[1] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

"SLAPP is an acronym for 'strategic lawsuits against public participation.' [Citation.] A special motion to strike a SLAPP action, codified in . . . section 425.16, provides a procedural remedy to gain an early dismissal of a lawsuit or a cause of action that qualifies as a SLAPP." (*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 309, fn. 1 [8 Cal.Rptr.3d 915].)

[2] In this opinion, it is necessary to refer to both Wilhelmina Daniels and her son Karl Daniels. For that reason we use their first names in the interest of clarity and ease of reference. No disrespect is intended.

and (2) possible satisfaction of the malice element by continued prosecution of an action, not just commencing, bringing, or initiating the action.

## FACTS

*The Underlying Litigation*

Young sued Wilhelmina for allegedly committing slander per se, intentional infliction of emotional distress, and intentional interference with an economic relationship by falsely stating to various individuals that (1) Young kidnapped Wilhelmina's son, Karl Daniels; (2) Young forced Karl into a sexual relationship; and (3) Young is a con man. Having filed a lawsuit against Wilhelmina in March 2004, Young proceeded to ignore his obligations to participate in the discovery process. Young refused to appear for his deposition and provided no substantive responses to any of 10 sets of written discovery propounded by Wilhelmina. The court granted Wilhelmina's motions to compel Young's compliance with the Civil Discovery Act (§ 2016.010 et seq.). But Young still refused to serve any written discovery responses or appear for a deposition.

Wilhelmina served a motion for terminating sanctions based on Young's refusal to follow the court's orders and to comply with his discovery obligations. Young's attorneys filed a very brief opposition to this motion, claiming Young had been diagnosed with pneumonia and was limited in his physical activities. Young's attorneys noted Young had finally produced some documents to Wilhelmina in April 2005 and was continuing to work on the written discovery requests. The court granted Wilhelmina's motion for terminating sanctions and dismissed the case.

*The Anti-SLAPP Motion*

Wilhelmina initiated the instant malicious prosecution case. The Quinlivan Attorneys filed a special motion to strike the complaint pursuant to section 425.16. Included with the motion were declarations by Patrick Quinlivan and Jack Robbins, in which they attested the filing and continued litigation of the prior case "was based upon [the firm's] reasonable tenable belief, based on information at [the firm's] disposal, that the facts supported the allegations in the complaint. At no time did I or anyone at [the] firm have feelings of ill will or malice toward Ms. Daniels. The action was filed and litigated by [the] firm solely to advance Mr. Young's right to petition and seek redress through the court."

*Evidence Submitted by Wilhelmina in Opposition to the Anti-SLAPP Motion*

Wilhelmina filed an opposition to the anti-SLAPP motion with several declarations in support of her position. Karl's declaration suggested Young

may have instigated the prior litigation against Wilhelmina (as well as two separate cases against Karl relating to alleged business torts) in bad faith. Karl moved to California in June 2003. After Karl returned home with his mother in November 2003, Young contacted Karl in Texas. Young's efforts to convince Karl to return with him to California "became tantamount to stalking" and motivated Karl to seek a protective order in Texas. Karl further declared: "On about April 14, 2004, Defendant James Young was in Austin, Texas, where he continued his attempts to have me return to California, and stated to me that if I did not return to California with him, that he would not rest until he bled my mother of all her money and a for sale sign was on her condo." Wilhelmina reasons that the underlying lawsuit was filed out of spite, not to redress a legitimate claim.

The remainder of Karl's declaration, as well as Wilhelmina's declaration, focused on the alleged impossibility of the factual allegations in Young's complaint. Young's complaint against Wilhelmina alleged, in relevant part: "On or about June 1, 2003, and continuing to the present, Defendant spoke the following words of and concerning the Plaintiff: Plaintiff kidnapped her son; Plaintiff had forced sexual relations with her son; and Plaintiff is a con man. [¶] The words were heard by employees at AFLAC, an insurance company with which Plaintiff does business, and several other persons whose names are not known to Plaintiff." Karl and Wilhelmina both declared, in essence, it would have been impossible for Wilhelmina to have spoken with anyone at Aflac on or about June 1 because Karl did not even move to California until June 10, 2003, and Wilhelmina did not track down his location and employer until October 2003. Wilhelmina denied she made any of the allegedly slanderous statements.

Counsel for Wilhelmina also submitted a declaration. This declaration described, in painstaking detail, the discovery abuses leading to the dismissal of Young's complaint against Wilhelmina. The implication drawn by Wilhelmina is that the lack of evidence produced in discovery shows there was no probable cause to file Young's lawsuit against her and there was no probable cause to continue the lawsuit against her once it became clear there was no evidence for the contentions in the complaint.

Counsel's declaration also raised other alleged instances of misconduct which purportedly implicate the Quinlivan Attorneys along with Young. First, Wilhelmina's counsel described several communications between counsel early in the underlying case. Wilhelmina's counsel sought an extension to answer the complaint against her, and was informed by defendant Robbins "that his client had not authorized him to issue an extension of time to

respond to the pleadings, and refused to stipulate to consolidating the three cases [against Wilhelmina and Karl]." Counsel for Wilhelmina, to no avail, informed Robbins of the Texas protective order against Young, claimed the slander lawsuit had no basis, and demanded to know the identity of the alleged witnesses. Wilhelmina suggests this evidence supports the inference that the Quinlivan Attorneys were on notice of the lack of merit to Young's claims and nevertheless were willing to file and pursue a meritless lawsuit and engage in abusive litigation tactics.

Second, Wilhelmina and Karl moved to consolidate the three actions filed against them by Young, but the Quinlivan Attorneys successfully opposed this motion through an allegedly false representation to the court. Robbins filed a declaration in the underlying action in which he stated the following, after describing the separate claims against Karl: "On the other hand, the case for defamation against Wilhelmina Daniels will involve taking depositions of at least ten witnesses, many of whom reside out of state and may be difficult to schedule. Also, we are seeking punitive damages against Ms. Daniels, which may require discovery on the financial condition, which will also likely involve delay in conducting discovery." Wilhelmina points out in her opposition to the anti-SLAPP motion that the identities of these 10 witnesses were never provided by Robbins or Young in response to formal and informal discovery requests. Allegations of perjury (by Robbins) appear throughout Wilhelmina's appellate briefs.[3]

Third, Wilhelmina's counsel described the disintegration of the Quinlivan Attorneys' representation of Young. Robbins was no longer employed by the Quinlivan firm by December 2004. The Quinlivan Attorneys initiated settlement talks in early 2005, in which the ultimate offer by Young to settle consisted of a dismissal with prejudice in exchange for a mutual release of all rights (including malicious prosecution claims). There were indications in May 2005 that Robbins might substitute in as counsel for Young but this never occurred. The Quinlivan firm filed a notice of appeal for Young on July 19, 2005, and also filed the same day a motion to be relieved as counsel, citing both the nonpayment of legal fees by Young and "irreconcilable differences between client and attorney regarding strategy that may result in a violation of the rules of professional conduct."

---

[3] But the allegedly false statement by Robbins is partially true on its face: Wilhelmina and Karl live outside California, and discovery in the case would logically include the depositions of Wilhelmina, Karl, Young, and any witnesses to Wilhelmina's alleged statements. The use of the number 10 by Robbins is somewhat ambiguous. Was Robbins estimating the number of expected witnesses or was he representing he already knew of at least 10 material witnesses?

*Court's Ruling on Anti-SLAPP Motion*

The court granted the anti-SLAPP motion. As to the malicious prosecution cause of action, the court found Wilhelmina failed to meet her burden as to the "favorable termination" element. The court also found Wilhelmina had not attempted to meet her burden to show she would prevail on her other three causes of action, essentially conceding that these causes of action were inappropriate in the context of the facts alleged. The court noted: "[Wilhelmina] concedes that these claims may be barred by the litigation privilege, but nonetheless contends that the Motion should be denied because these claims are basically the same as the First Cause of Action for Malicious Prosecution. Plaintiff cites no authority for this contention."

## DISCUSSION

Wilhelmina asserts the court erred in granting the Quinlivan Attorneys' motion to strike the complaint under section 425.16. Our review of the court's order[4] is de novo, and entails an independent review of the entire record. (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 197 [51 Cal.Rptr.3d 484] (*Ross*); *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786] (*HMS Capital*).)

*Anti-SLAPP Motion Analytical Framework*

■ "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

■ The first step of the inquiry is not disputed here. The anti-SLAPP statute defines an " 'act in furtherance of a person's right of petition or free speech' " to include "any written or oral statement or writing made before

---

[4] An order granting or denying a motion to strike under section 425.16 is appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

a . . . judicial proceeding . . . ." (§ 425.16, subd. (e)(1).) The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735 [3 Cal.Rptr.3d 636, 74 P.3d 737] (*Jarrow Formulas*).) Wilhelmina's other claims also pertain to the Quinlivan Attorneys' written and oral statements in the same prior judicial proceedings.

The question presented in this case relates to the second step of the anti-SLAPP inquiry: Did Wilhelmina meet her burden of "establish[ing] that there is a probability [she] will prevail on [her] claim[s?]" (§ 425.16, subd. (b)(1).) "[A]lthough by its terms section 425.16, subdivision (b)(1) calls upon a court to determine whether 'the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim' (italics added), past cases interpreting this provision establish that the Legislature did not intend that a court, in ruling on a motion to strike under this statute, would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation that poses a potential chilling effect on speech-related activities." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) "[T]he court's responsibility is to accept as true the evidence favorable to the plaintiff . . . ." (*HMS Capital, supra*, 118 Cal.App.4th at p. 212.) "[T]he defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585 [132 Cal.Rptr.2d 789].)

*Probability of Prevailing on Abuse of Process, Negligence, Intentional Infliction Torts*

We agree with the trial court that Wilhelmina completely failed to meet her burden of showing a probability of prevailing on three of her causes of action. Wilhelmina stated in her opposition: "Being merely other labels or theories of recovery, arising from the same operative facts and causing the same damages, the [final three causes of action] may fairly be treated as subsumed by the first cause of action [for malicious prosecution]. [O]ne cause of action is, essentially, asserted." Wilhelmina did not set out the elements of these causes of action or attempt to show sufficient evidence had been provided to satisfy these elements.

■ Moreover, even if Wilhelmina had attempted to meet her burden, it is clear the litigation privilege (Civ. Code, § 47, subd. (b)) forecloses the pursuit of these causes of action against the Quinlivan Attorneys. Communications in a "judicial proceeding" are subject to the "absolute" privilege of Civil Code section 47, subdivision (b), absent certain inapplicable statutory exceptions. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360–361 [7 Cal.Rptr.3d 803, 81 P.3d 244].) The only tort claim falling outside the litigation privilege is malicious prosecution. (*Ibid.*) The Quinlivan Attorneys are being sued for filing a complaint against Wilhelmina and filing other documents against her in the course of the lawsuit. Wilhelmina has identified no *conduct* by the Quinlivan Attorneys apart from the communications they engaged in during the underlying lawsuit. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 210–211, 219–220 [266 Cal.Rptr. 638, 786 P.2d 365] [litigation privilege precludes intentional infliction of emotional distress cause of action based on communications in furtherance of the objects of the litigation]; *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202] ["the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action"].) Indeed, Wilhelmina admits her additional tort claims arise from the same operative facts as her malicious prosecution claim. In these circumstances, any attempt by Wilhelmina to establish a probability of prevailing on these causes of action would be futile.

*Probability of Prevailing on Malicious Prosecution Cause of Action*

■ " 'Malicious prosecution is a disfavored action. [Citations.] This is due to the principles that favor open access to the courts for the redress of grievances.' " (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 493 [78 Cal.Rptr.2d 142] (*Downey Venture*).) "[T]he elements of the [malicious prosecution] tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) Three elements must be pleaded and proved to establish the tort of malicious prosecution: (1) A lawsuit was " ' "commenced by or at the direction of the defendant [which] was pursued to a legal termination in . . . plaintiff's . . . favor" ' "; (2) the prior lawsuit " ' "was brought without probable cause" ' "; and (3) the prior lawsuit " ' "was initiated with malice." ' " (*Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906, 911 [8 Cal.Rptr.3d 199].) We shall examine each element in turn.

### 1. *Wilhelmina Established a Prima Facie Showing That the Underlying Action Was Terminated in Her Favor*

"The first element of a malicious prosecution cause of action is that the underlying case must have been terminated in favor of the malicious prosecution plaintiff. The basis of the favorable termination element is that the resolution of the underlying case must have tended to indicate the malicious prosecution plaintiff's innocence. [Citations.] When prior proceedings are terminated by means other than a trial, the termination must reflect on the merits of the case and the malicious prosecution plaintiff's innocence of the misconduct alleged in the underlying lawsuit." (*HMS Capital, supra*, 118 Cal.App.4th at p. 214.) If the evidence of the circumstances of the termination is conflicted, " 'the determination of the reasons underlying the dismissal is a question of fact.' " (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 [69 Cal.Rptr.3d 561] (*Sycamore Ridge*).)

It is clear that, at least in some circumstances, the dismissal of an underlying action as a result of discovery sanctions will satisfy the favorable termination element of a malicious prosecution claim. (*Ross, supra*, 145 Cal.App.4th at pp. 192, 198–202.) In *Ross*, the underlying lawsuit was dismissed following the malicious prosecution defendant's (Kish) refusal to appear for a deposition, despite a court order. (*Id.* at pp. 194–195.) The *Ross* court, affirming the denial of Kish's anti-SLAPP motion, concluded "Kish's refusal to be deposed reasonably may be construed as a concession his claims . . . lacked merit." (*Id.* at p. 192.) In coming to its conclusion, the *Ross* court considered the evidentiary record from the underlying action (which suggested Kish's claims lacked merit), the sophistication of Kish, and Kish's familiarity with the key factual issues in the underlying case. (*Id.* at pp. 198–200.)

The approach utilized in *Ross* is not unique; other states' highest courts have concluded that the circumstances surrounding the dismissal of an underlying case for discovery abuse may justify a conclusion that a favorable termination on the merits occurred. (See *Chervin v. The Travelers Ins. Co.* (2006) 448 Mass. 95 [858 N.E.2d 746] [reversing summary judgment, Mass. Supreme Ct. held dismissal of underlying action based on failure to respond to interrogatories can be favorable termination for malicious prosecution plaintiff]; *Paul v. Sherburne* (2006) 153 N.H. 747 [903 A.2d 1011] [reversing grant of motion to dismiss, N.H. Supreme Ct. held dismissal of underlying petition based on petitioner's failure to appear at final hearing can be favorable termination]; *Nagy v. McBurney* (1978) 120 R.I. 925 [392 A.2d 365, 368] [reversing directed verdict, R.I. Supreme Ct. explained dismissals of underlying collection actions based on party's "failure to file further

bills of particulars ordered by the court" established favorable terminations of those actions for malicious prosecution plaintiff].)

Similar types of dismissals are also favorable terminations in appropriate circumstances. For example, "[a] voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury." (*Sycamore Ridge, supra,* 157 Cal.App.4th at pp. 1400–1401 [sufficient anti-SLAPP prima facie showing of favorable termination made in voluntary dismissal case]; compare with *Contemporary Services Corp. v. Staff Pro. Inc.* (2007) 152 Cal.App.4th 1043, 1056–1058 [61 Cal.Rptr.3d 434] [malicious prosecution plaintiffs failed to meet anti-SLAPP burden to show voluntary dismissal in underlying case reflected on the merits].) Likewise, a dismissal of an action for failure to prosecute raises a factual issue of favorable termination in an ensuing malicious prosecution action, based on "the natural assumption that one does not simply abandon a meritorious action once instituted." (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827–828 [145 Cal.Rptr. 829].) Furthermore, a final judgment after trial is a favorable termination even if the plaintiff is precluded by evidentiary sanctions from presenting evidence at the trial. (*Lumpkin v. Friedman* (1982) 131 Cal.App.3d 450, 452–456 [182 Cal.Rptr. 378].)

Returning to the case before us, the court in the underlying action explained its rationale for granting terminating sanctions. After hearing from the attorneys, the court indicated it could (1) deny the motion and let the matter proceed to trial; (2) grant evidentiary sanctions and proceed to trial, i.e., "nothing except what has been disclosed in discovery will be admitted at trial"; or (3) find there is "no basis for trial [as] there is no way [Young] can prove his claims." The court indicated it did not wish to dismiss the case solely because the discovery was not served in a timely fashion. The court then took a recess and reviewed documents (bank statements) produced by Young shortly before the terminating sanctions hearing. The court returned and ruled: "Now, normally discovery sanctions must be narrowly tailored to provide a remedy . . . . But as of the time this motion was filed until last Friday, no information had been provided except for some bank statements [and] the initial responses [had] objections only. [¶] I think it is unfair for the defense to go to trial with that information." "Based upon the discovery I've seen, if I were to exclude any evidence not presented during discovery, Mr. Young would not be able to meet his burden . . . ."

We conclude Wilhelmina met her burden under section 425.16, subdivision (b), by submitting evidence that the judgment in the underlying action reflected on the merits of the case against her. Young did not provide any

timely discovery responses and ignored repeated court orders to do so. Ruling on Wilhelmina's motion for terminating sanctions on the eve of trial, the court noted that even if the discovery served by Young as a last-gasp effort to stave off sanctions were allowed at trial, Young still could not prove his case. Notwithstanding the fact that trial did not actually commence in this case, the relief granted by the court is comparable to granting a nonsuit motion. Not every case in which a terminating sanctions motion is granted necessarily results in a "favorable termination." But where the record from the underlying action is devoid of any attempt during discovery to substantiate allegations in the complaint, and the court's dismissal is justified by the plaintiff's lack of evidence to submit the case to a jury at trial, a prima facie showing of facts sufficient to satisfy the "favorable termination" element of a malicious prosecution claim is established for purposes of an anti-SLAPP motion.

The Quinlivan Attorneys argue that a line of cases precludes this result in malicious prosecution cases filed against *attorneys* rather than the plaintiff from the underlying action. (See *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 826–829 [71 Cal.Rptr.2d 802] (*Pattiz*) [case against client and attorneys]; *De La Pena v. Wolfe* (1986) 177 Cal.App.3d 481, 484–486 [223 Cal.Rptr.325] (*De La Pena*) [case against attorneys]; *Zeavin, supra*, 136 Cal.App.3d at pp. 770–773 [case against attorneys].) We disagree.

In *Pattiz*, the court affirmed summary judgment in favor of three malicious prosecution defendants—Minye and her two attorneys from the underlying action. (*Pattiz, supra*, 61 Cal.App.4th at p. 824.) The underlying action was dismissed as a sanction for discovery abuses, namely Minye's incomplete and disorderly production of documents and the failure of Minye's daughter to appear for a deposition; Minye herself appeared for her deposition and participated in the document production, however deficient. (*Id.* at p. 825.) The *Pattiz* court held that the undisputed facts did not support an inference that the dismissal of the underlying case reflected on the merits because "Minye did not abandon the action or refuse to cooperate in discovery. Moreover, it would be unfair to ascribe a lack of cooperation by Minye to her daughter's act of refusing further deposition due to illness." (*Id.* at pp. 827–828.) The *Pattiz* court continued: "We disagree that the municipal court expressly found or reasonably inferred that Minye destroyed documents to prevent Pattiz's defense to the cross-complaint. The discovery ruling stated only that Minye misused the discovery process and 'egregious[ly]' failed to comply with court-ordered discovery. The ruling made no express findings concerning the merits of the cross-complaint." (*Id.* at p. 828.) *Pattiz* correctly found, as a matter of law, that the malicious prosecution plaintiff had failed to prove a favorable termination on the merits based on the record before it.

In *De La Pena,* the court affirmed summary judgment in favor of a defendant who appeared as the plaintiff's attorney in the underlying action. (*De La Pena, supra,* 177 Cal.App.3d at p. 483.) The underlying action was filed in June 1980; on September 25, the court granted a motion to dismiss after the plaintiff in the underlying action failed to answer interrogatories. (*Ibid.*) Wolfe, retained by the plaintiff in the underlying action in June 1980 to accept approximately 400 collection cases, filed a substitution of counsel form in the underlying action on September 30. (*Ibid.*) The court dismissed the case and entered judgment in the underlying action on October 23, 1980. (*Ibid.*) Under these undisputed facts, it would be shocking to hold Wolfe liable for malicious prosecution, and the court correctly affirmed summary judgment. Wolfe was not the attorney who filed the complaint or otherwise maintained the action, and he could not logically have been the source of any malicious prosecution damages.

In *Zeavin,* two doctors filed a malicious prosecution action against an attorney and his client, Chung, the plaintiff in an underlying medical malpractice action. (*Zeavin, supra,* 136 Cal.App.3d at p. 768.) The complaint alleged the underlying lawsuit was dismissed with prejudice because Chung refused to cooperate with her attorneys, failed to answer written interrogatories, and refused to appear for a deposition. (*Ibid.*) The malicious prosecution complaint alleged the underlying complaint was filed without probable cause because the surgery performed on Chung was necessary to save her life and was within the community's standard of care. (*Id.* at p. 769.) The trial court sustained the attorney's demurrer to the complaint "for the reason that the termination of the prior action was not a 'favorable termination' " (*ibid.*), and the appellate court affirmed (*id.* at p. 773). The *Zeavin* court found the complaint, which alleged Chung refused to cooperate with her attorney or comply with discovery obligations, was insufficient to constitute an allegation that the underlying action was terminated on the merits in favor of the doctors. (*Id.* at p. 771.) *Zeavin* does not hold that an underlying action terminated by way of discovery sanctions can never constitute a favorable termination.

*Zeavin* suggests that a favorable termination can never occur vis-à-vis an attorney defendant in a malicious prosecution action when the underlying case was dismissed for discovery sanctions, at least where the attorney is not implicated in any misconduct. (*Zeavin, supra,* 136 Cal.App.3d at p. 773 ["While it may sometimes be proper to hold that a prior action was unfavorably terminated against a party solely because of her conduct in refusing to cooperate or make discovery or by reason of her unilateral abandonment of that action, the attorney is not the insurer of his client's

conduct, and the law wisely places no such burden on that party's *attorney . . . .*"].) Both *Pattiz* and *De La Pena* cited and discussed *Zeavin* to support their conclusions that there was no favorable termination as to the attorney defendants. (*Pattiz, supra,* 61 Cal.App.4th at pp. 828–829; *De La Pena, supra,* 177 Cal.App.3d at pp. 484–486.) But, as made clear by our discussion above, it was unnecessary for *Pattiz* or *De La Pena* to rely on *Zeavin* to distinguish attorneys from their clients; there was no favorable termination as to the client in *Pattiz* and the attorney in *De La Pena* was not really the attorney who initiated or maintained the action.[5]

*Zeavin* was correct in protecting attorneys from malicious prosecution actions that ensued after their client's recalcitrance in discovery led to the dismissal of an underlying action. *Zeavin,* however, conflated the elements of malicious prosecution and appended the correct analysis to the wrong element—element one (favorable termination), instead of element three (malice). *Zeavin* could have reached the same result by concluding that the plaintiff did not sufficiently plead facts showing malice on the part of the attorney defendant merely by alleging the client failed to cooperate with discovery obligations. Courts should not impute malice to attorneys based on clients' misconduct. (See *Estate of Tucker ex rel. Tucker v. Interscope* (9th Cir. 2008) 515 F.3d 1019, 1036 [relying on *Zeavin* as authority for this proposition in its analysis of attorney's alleged malice].)

*Zeavin* contemplated that the favorable termination element could be adjudicated differently depending on the identity of the defendant in the malicious prosecution action and the responsibility of that particular defendant for the conduct leading to the dismissal of the underlying action. The question presented by the favorable termination element of malicious prosecution, however, is whether the termination reflects the innocence of the malicious prosecution plaintiff or the lack of merit of the underlying action, *not* whether the termination reflects on the good faith of the particular malicious prosecution defendant.

*Zeavin,* addressing only the favorable termination element of malicious prosecution, found it inconceivable that an attorney could be held liable for a client's intransigence in discovery: "It would be beyond law or reason to conclude that an attorney who in good faith files and diligently prosecutes an action could later be held liable for malicious prosecution solely because that

---

[5] *Ross, supra,* 145 Cal.App.4th 188, and *Lumpkin v. Friedman, supra,* 131 Cal.App.3d 450, were cases in which the client in the underlying action acted as his own attorney and the discovery misconduct was the direct fault of the client (acting as his own attorney). Those cases did not implicate the distinction between attorney and client.

attorney's client later unilaterally, and for reasons known only to herself, refuses to make discovery." (*Zeavin, supra*, 136 Cal.App.3d at p. 772.) But the *Zeavin* court did not acknowledge that the other two elements of malicious prosecution, probable cause and malice, would exonerate attorneys from liability in the hypothetical scenario described, and would do so on a more satisfactory analytical basis.

■ *Zeavin* did not address, much less decide, a hypothetical case in which an attorney has no probable cause for filing a suit and shares the client's actual malice against the defendant. We hold that in such a case, liability for malicious prosecution could attach to the attorney as well as the client if the case ended due to discovery sanctions. In determining whether a "favorable termination" accrued in favor of the malicious prosecution plaintiff, we conclude no consideration should be given to whether the malicious prosecution defendant was a plaintiff or the attorney for the plaintiff in the underlying action.

### 2. Wilhelmina Established a Prima Facie Showing That the Underlying Action Was Brought Without Probable Cause

■ "Where there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question of whether there was probable cause to institute that action is purely legal." (*Ross, supra*, 145 Cal.App.4th at p. 202.) "The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted." (*Sheldon Appel, supra*, 47 Cal.3d at p. 878.) Here, the question is not whether Young's allegations in the underlying action constituted valid causes of action if true. If Wilhelmina engaged in the conduct alleged by Young in his complaint, there are causes of action available to remedy such tortious conduct.

■ Instead, Wilhelmina claims the Quinlivan Attorneys had an insufficient factual basis to support the complaint in the underlying action, did not investigate Young's allegations, and ignored evidence provided by Wilhelmina's attorneys suggesting Young had ulterior motives for pursuing litigation against Wilhelmina. " '[P]robable cause is lacking "when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial." ' " (*Morrison v. Rudolph* (2002) 103 Cal.App.4th 506, 512 [126 Cal.Rptr.2d 747], disapproved in part on other grounds in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802] (*Zamos*).) " 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.' " (*Soukup v. Law Offices*

*of Herbert Hafif* (2006) 39 Cal.4th 260, 292 [46 Cal.Rptr.3d 638, 139 P.3d 30].) "When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief." (*Sheldon Appel, supra,* 47 Cal.3d at p. 881, citation omitted.)

In general, a lawyer "is entitled to rely on information provided by the client." (*Morrison v. Rudolph, supra,* 103 Cal.App.4th at pp. 512–513.) If the lawyer discovers the client's statements are false, the lawyer cannot rely on such statements in prosecuting an action. (*Id.* at p. 513; *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 156–157 [91 Cal.Rptr.2d 433] [adversary provided verifiable facts disproving allegations made in demand letter].) But a letter from a litigation adversary merely suggesting it disagrees with the verity of the allegations in the lawsuit is not sufficient to put the lawyer on notice of the falsity of the client's allegations. (See *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 627 [124 Cal.Rptr.2d 556] [declining to hold "boilerplate denial of the facts" puts "lawyers on notice of any specific fatal flaw" in claim], disapproved on other grounds in *Zamos, supra,* 32 Cal.4th at p. 973.)

Wilhelmina has sufficiently raised a factual dispute as to whether the Quinlivan Attorneys objectively had probable cause to institute and continue to prosecute (for more than one year) the underlying litigation against Wilhelmina. (See *Zamos, supra,* 32 Cal.4th at p. 970 [continued prosecution of claim by attorney after discovering lack of probable cause may support malicious prosecution action].) Wilhelmina establishes in the record the complaint was bare bones and does not indicate whether Young himself heard the alleged statements by Wilhelmina; Young and the Quinlivan Attorneys did not disclose *any* information, documents, or other detail supporting his claims in the underlying litigation; and no individuals who heard the alleged slanderous remarks by Wilhelmina were ever disclosed.

It seems clear Young told the Quinlivan Attorneys *something* about the alleged statements made by Wilhelmina. Did Young claim to be a witness to those events or did he relate purported secondhand statements to his attorneys? If Young was unable to testify from his personal knowledge that Wilhelmina actually made the alleged slanderous statements, his testimony that others told him Wilhelmina made the statements would be inadmissible. If the only information available to the Quinlivan Attorneys would be inadmissible at trial, did the Quinlivan Attorneys have *any* evidentiary basis for the complaint? To be slanderous or to have affected Young's business relations, Wilhelmina's alleged statements must have been made in the

presence of others (not just Young). Based on the anti-SLAPP motion record, it appears the Quinlivan Attorneys may not have demanded the identities of these individuals as a prerequisite to filing the complaint, which evidence would appear to be necessary to support a reasonable inference that evidence could be discovered supporting Young's claims during the lawsuit. Moreover, Young's persistent refusal to supply the names of alleged witnesses arguably put the Quinlivan Attorneys on constructive notice at some point after filing the lawsuit that there was no probable cause for the claims against Wilhelmina.

Under the circumstances presented, the probable cause inquiry requires a predicate factual determination. The Quinlivan Attorneys were entitled to believe Young's evidentiary statements (if there were any) in the first instance. Moreover, even if Young himself did not purport to possess admissible evidence, if Young's statements afforded a reasonable inference that such evidence could be obtained during discovery, the Quinlivan Attorneys could rely on such statements in filing the complaint. Wilhelmina did not provide any verifiable facts at the outset of the case that would disprove Young's key allegations.[6] But the absence of any witnesses, documents, or other evidence in support of Young's allegations in the prior litigation is a sufficient prima facie showing at this stage to find Wilhelmina has a probability of prevailing on the element of probable cause.

### 3. Wilhelmina Failed to Establish a Prima Facie Showing That the Quinlivan Defendants Acted with Malice

■ As noted in *Downey Venture, supra,* 66 Cal.App.4th at page 494, "[t]he 'malice' element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of . . . the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." Improper purposes can be established in cases in which, for instance (1) the person bringing the suit does not believe that the claim may be held valid; (2) the proceeding is initiated primarily because of hostility or ill will; (3) the proceeding is initiated solely for the purpose of depriving the opponent of a beneficial use of property; or (4) the proceeding is initiated for the purpose of forcing a settlement bearing no relation to the merits of the claim. (*Sycamore Ridge, supra,* 157 Cal.App.4th at p. 1407.) If the prior action was not objectively tenable, the extent of a defendant's attorney's

---

[6] Contrary to Wilhelmina's argument, the precise date of her allegedly slanderous statements is not central to the allegations in the underlying case. Moreover, Young's alleged "stalking" of Karl and his alleged motives in filing the underlying suit do not, even if true, logically compel the conclusion that Wilhelmina did not commit the torts alleged in the underlying matter.

investigation and research may be relevant to the further question of whether or not the attorney acted with malice. (*Ibid.*)

"Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc., supra*, 118 Cal.App.4th at p. 218.) The record clearly supports an inference that *Young* brought the underlying case with malice; his personal relationship with and alleged threats to Karl suggest his subjective intent in pursuing the baseless underlying suit may have been to exact revenge on Wilhelmina and Karl. The question presented, though, is whether the quantum of evidence is sufficient to establish a prima facie case against the *Quinlivan Attorneys*. The Quinlivan Attorneys denied in their declarations that they brought and pursued the underlying action with an improper motive. Instead, they claim they merely sought to vindicate their client's legal rights, presumably in exchange for fees. It would be improper to impute Young's malice to the Quinlivan Attorneys. (See *Zeavin, supra*, 136 Cal.App.3d at p. 773 ["the attorney is not the insurer of his client's conduct, and the law wisely places no such burden on that party's *attorney* solely by reason of his client's conduct . . ."].)

■ There are several pieces of evidence relied on by Wilhelmina. First and foremost is the total lack of merit in the allegations made in the underlying lawsuit. However, a lack of probable cause in the underlying action, by itself, is insufficient to show malice. (*HMS Capital, supra*, 118 Cal.App.4th at p. 218 ["A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence."]; see also *Downey Venture, supra*, 66 Cal.App.4th at p. 498 [the lack of "legal tenability, as measured objectively . . . *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind"].) Indeed, in *Jarrow Formulas*, the Supreme Court noted that even if no competent evidence was adduced in discovery to support claims in an underlying action, this does not, on its own, support a finding of malice in a section 425.16 hearing. (*Jarrow Formulas, supra*, 31 Cal.4th at p. 743.)

As noted above, a fair inference from the record is that the Quinlivan Attorneys failed to adequately investigate the factual assertions made by Young before suing Wilhelmina. But evidence of the Quinlivan Attorneys' possible negligence in conducting factual research is also not enough on its own to show malice. (*Grindle v. Lorbeer* (1987) 196 Cal.App.3d 1461, 1467–1468 [242 Cal.Rptr. 562] [affirming summary judgment because careless prefiling factual research did not constitute actual malice on the part of attorneys].)

 Additional proof of malice can consist of evidence a party *knowingly* brings an action without probable cause. (See *Swat-Fame, Inc. v. Goldstein, supra*, 101 Cal.App.4th at p. 634 ["While after *Sheldon Appel* a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party *knowingly* brings an action without probable cause."], disapproved on other grounds in *Zamos, supra*, 32 Cal.4th at p. 973.) We think a corollary to this rule can be stated as follows: malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause.

This corollary follows from *Zamos, supra*, 32 Cal.4th 958. In *Zamos*, the attorney defendants to a malicious prosecution action had previously brought a fraud claim based on the representations of their client, but were soon thereafter provided by their opponents with sworn deposition testimony of their client contradicting the fraud allegations. (*Id.* at pp. 961–962.) The *Zamos* attorney defendants continued with the fraud case through trial, where the court granted a nonsuit motion. (*Id.* at p. 963.) The trial court in the malicious prosecution case granted an anti-SLAPP motion in favor of the attorney defendants. (*Id.* at p. 964.) The Court of Appeal reversed (as to the attorney defendants), and our Supreme Court affirmed the reversal. (*Ibid.*)

The *Zamos* court observed that it had previously characterized one element of malicious prosecution "as *commencing, bringing, or initiating* an action without probable cause." (*Zamos, supra*, 32 Cal.4th at p. 965.) But it could find no authority or principled reason for distinguishing between an attorney's lack of probable cause for bringing an action and lack of probable cause for continuing to prosecute an action. (*Id.* at p. 969.) Thus, the Supreme Court held: "an attorney may be held liable for continuing to prosecute a lawsuit discovered to lack probable cause." (*Id.* at p. 960.) The *Zamos* court rejected an argument that its "holding would be unworkable because it would divert an attorney's attention away from the zealous representation of his or her client . . . ." (*Id.* at p. 970.) "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." (*Ibid.*)

 Although *Zamos* did not explicitly address the malice element of a malicious prosecution case, its holding and reasoning compel us to conclude that malice formed after the filing of a complaint is actionable. "Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset." (*Zamos, supra*, 32 Cal.4th at p. 969.)

Like the attorney defendants in *Zamos*, any potential liability of the Quinlivan Attorneys would be based on a knowing lack of factual support for the contentions made in the underlying lawsuit. *Zamos* differs from this case in that here the factual allegations were called into question by the apparent absence of any evidentiary support for the allegations, whereas in *Zamos* the factual allegations were explicitly disproved by the presentation of prior sworn deposition testimony. This distinction is dispositive. The Quinlivan Attorneys' sustained inability to provide any support for Young's allegations, on its own, does not allow an inference that they knew there was no probable cause for continuing to prosecute the underlying action.

Wilhelmina also points to the settlement discussions between the parties, in which Young's offer to dismiss the complaint with prejudice was conditioned on a waiver of all malicious prosecution claims. In *HMS Capital, supra*, 118 Cal.App.4th at pages 218–219, the court found the combination of a frivolous claim, a failure to pursue meaningful discovery by the plaintiff, and an attempt to "squeeze a settlement . . . on a baseless case" (*id.* at p. 218), was enough evidence of malice to defeat an anti-SLAPP motion. The plaintiff in the underlying action in *HMS Capital* refused to dismiss a frivolous case unless the defendant paid $25,000. (*Id.* at pp. 218–219.) As noted above, Young's conduct (including this settlement position) cannot be imputed to the Quinlivan Attorneys. Further, Young's offer to dismiss the action in exchange for a release of all claims is not equivalent to the bad faith exhibited in *HMS Capital*.

In sum, the evidence marshaled against the Quinlivan Attorneys is as follows: an apparent lack of evidentiary support for the factual allegations in the underlying action; a lack of factual investigation as evidenced by an inability to provide formal or informal discovery; a client who may have had actual ill will against Wilhelmina; and a refusal by Young to dismiss without a waiver of claims by Wilhelmina. This record, which lacks any affirmative evidence that the Quinlivan Attorneys met the requirements of malice, including knowledge the case lacked probable cause, is insufficient as a matter of law to establish malice as to the Quinlivan Attorneys.[7]

*Motion to Submit Additional Evidence or for Writ of Error* Coram Vobis

Through a motion, Wilhelmina asks this court to consider voluminous evidence she has uncovered in discovery from Young after the court granted

---

[7] Our holding—the absence of any affirmative evidence of malice on the part of the attorneys precludes a successful malicious prosecution action against them—is consistent with *Zeavin, supra*, 136 Cal.App.3d 766, *De La Pena, supra*, 177 Cal.App.3d 481, and *Pattiz, supra*, 61 Cal.App.4th 822.

the Quinlivan Attorneys' anti-SLAPP motion, including Young's deposition, Robbins's deposition, a declaration signed by Young, and numerous other documents.

It would not be appropriate for this court to hold a de novo anti-SLAPP motion hearing based on evidence not presented to the trial court. Nor do we think directing the trial court to rehear the motion by issuing a writ of error *coram vobis* is appropriate. Wilhelmina could have moved the trial court for an order under section 425.16, subdivision (g), to obtain necessary discovery despite the anti-SLAPP discovery stay. She did not utilize this procedure.

■ "A writ of error *coram vobis* is considered to be a drastic remedy . . . ." (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1296 [7 Cal.Rptr.3d 153].) Among the requirements for issuance of the writ is that "[t]he proffered new evidence will either compel or make probable a different result in the trial court" (*ibid.*) and that the "proffered new evidence was unavailable to the petitioner because of extrinsic fraud that prevented the petitioner from having a meaningful hearing on the issue in question" (*ibid.*). Here, the new evidence would not make probable a different result, nor was the evidence unavailable because of extrinsic fraud.

Indeed, the new Young declaration weighs in *favor* of a finding that the Quinlivan Attorneys had probable cause to file the underlying action because it suggests that Young did provide multiple names of alleged witnesses prior to the commencement of the action. The Quinlivan Attorneys were previously precluded from submitting evidence of communications with Young by their duty to uphold the attorney-client privilege.

As to the malice element, the new evidence shows that the Quinlivan Attorneys established a written record suggesting Young refused to cooperate with them in preparing the case and refused to pay his legal bills. The Quinlivan Attorneys were stuck in the unenviable position of representing an uncooperative client without possessing any evidentiary support for the complaint. But this is not enough to establish malice.

*Award of Costs*

■ Finally, Wilhelmina challenges the court's award of costs to the Quinlivan Attorneys. "[A] prevailing defendant on a special [anti-SLAPP] motion to strike shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c).) The court awarded attorney fees and only those costs deemed to be arising out of the anti-SLAPP motion, concluding the Quinlivan Attorneys failed to seek ordinary costs pursuant to sections 1032 through 1034 in a timely fashion.

Wilhelmina claims the Quinlivan Attorneys' entire request for costs was untimely, and that this court should therefore reverse the court's order awarding $2,323.45 in costs (Wilhelmina does not challenge the attorney fees award). The clerk served notice of the court's unsigned minute order granting the anti-SLAPP motion on February 1, 2008. The Quinlivan Attorneys served their memorandum of costs and motion for attorney fees and costs on March 24, 2008. Wilhelmina points to California Rules of Court, rule 3.1700, which states in relevant part: "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of mailing of the notice of entry of judgment or dismissal by the clerk under . . . section 664.5 . . . ."[8]

 The court's award of costs was justified. By its terms, California Rules of Court, rule 3.1700 refers only to notice of entry of judgment or dismissal. The order granting the anti-SLAPP motion did not qualify as a dismissal, as it was an unsigned minute order. (§ 581d ["All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ."].) This is not a case like *Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 994 [81 Cal.Rptr.3d 354], where the court held a signed order granting an anti-SLAPP motion qualified as "a written order of dismissal of the entire action, and therefore was a judgment pursuant to section 581d."

Nor can the court's minute order be deemed a judgment under section 577. (§ 577 ["A judgment is the final determination of the rights of the parties in an action or proceeding."].) This is not a case in which the order at issue is the final determination of the rights of all of the parties in the action and can therefore be deemed a judgment. (See *Melbostad v. Fisher, supra,* 165 Cal.App.4th at pp. 995–996.) Section 579 provides: "In an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper." We are reviewing the court's order granting the Quinlivan Attorneys' anti-SLAPP motion, which does not resolve the entire action (Young is still a defendant). The court was never asked to exercise its discretion and enter judgment in favor of the Quinlivan Attorneys. Because neither of the parties obtained a final judgment from the court, the 15-day time limit on filing a memorandum of costs never started to run.

---

[8] California Rules of Court, rule 3.1702(b)(1), provides in relevant part: "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108." Of course, parties have at least 60 days to file a notice of appeal under rules 8.104 and 8.108. Thus, Wilhelmina has not argued that the Quinlivan Attorneys failed to file their motion for attorney fees in a timely fashion.

## DISPOSITION

The court's order granting the Quinlivan Attorneys' anti-SLAPP motion is affirmed. The court's order awarding attorney fees and costs to the Quinlivan Attorneys is also affirmed. Wilhelmina's motion to submit additional evidence or for writ of error *coram vobis* is denied. The Quinlivan Attorneys shall recover their costs and attorney fees incurred on appeal in an amount to be determined by the trial court.

Sills, P. J., and Fybel, J., concurred.