Filed 7/14/25  Berstein Law v. Cohen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BERSTEIN LAW, PC<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>IVAN PAUL COHEN et al.,<br><br>　　Defendants and Appellants. | G062946<br><br>(Super. Ct. No. 30-2022-01288500)<br><br>O P I N I O N |

　　　　　Appeal from an order of the Superior Court of Orange County, Michael J. Strickroth, Judge. Reversed and remanded with directions.

　　　　　Berman, Berman, Berman, Schneider & Lowary, Stephanie Berman Schneider, Gina Genatempo, and Rochelle M. McKenzie for Defendants and Appellants.

　　　　　Berstein Law, David A. Berstein, and John Dimuzio for Plaintiff and Respondent.

After the settlement of a federal case which resolved a dispute over control of a corporation, and the dismissal of a separately pending state court action, Berstein Law PC (Berstein) filed a malicious prosecution action against Ivan Paul Cohen and the Law Offices of Ivan P. Cohen (collectively, Cohen), also alleging causes of action for abuse of process, defamation, trade libel, and unfair competition. Cohen appeals from the trial court's partial denial of a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute. Cohen argues the court erred in concluding Berstein demonstrated the requisite minimal merit of its malicious prosecution claim. We agree. Because Berstein failed to meet its anti-SLAPP burden on at least one element of the malicious prosecution claim, the anti-SLAPP motion should have also been granted as to that claim. Accordingly, we reverse the order, direct the court to vacate it, and direct it to enter a new order granting Cohen's anti-SLAPP motion in full.

FACTS

The facts giving rise to the present case involve Icon Internet Media, Inc. (Icon), a former client of both Berstein and Cohen. At one point in time Scott and Dave Johnson, fully owned Icon in equal share.[1] They each held a director position on Icon's two-person board of directors, and Dave was the chief executive officer (CEO) and president of Icon.

In 2019, after Dave stepped down from his CEO and president roles at Icon and Scott assumed those roles, Icon sued Dave and Dave's wife

---

[1] Because they have the same last name, we refer to Scott and Dave by first name to avoid confusion. No disrespect is intended.

in federal court (the federal action).[2] At Scott's direction, Berstein represented Icon in the federal action. According to the complaint, Dave and his wife had engaged in "a systemic and escalating course of malicious conduct directed at harming [Icon]." Among the causes of action pled were copyright and trademark infringement, tortious interference with existing contracts, with prospective contractual relations, and with business relations, civil conspiracy, trade secret misappropriation, breach of fiduciary duties, and conversion.

After Dave and his wife filed a motion for judgment on the pleadings in the federal action, but before the court heard and ruled on the matter, Scott passed away. Thereafter, allegedly pursuant to Icon's bylaws, Dave assumed the role of CEO and president.

In early October 2021, roughly six weeks after Scott's passing and at a time when the heirs of Scott's fifty percent interest in Icon allegedly were not yet established, Icon sued Berstein and an Icon employee (the Icon employee). Through the lawsuit (the state action), which was filed by Cohen at Dave's direction, Icon sought damages, as well as declaratory and injunctive relief, based on claims of legal malpractice, conversion, and a violation of Business and Professions Code section 17200. Among the complaint's allegations vis-à-vis Bernstein were the following: Scott's death left Dave as Icon's sole director until someone were to be appointed in accordance with Icon's bylaws; "[i]n order to preserve the assets of [Icon] and ensure liabilities of [Icon] were met, Dave promptly acted on its behalf" by,

---

[2] On our own motion, we take judicial notice of two documents which the trial court judicially noticed at Cohen's request: the complaint in the federal action and the complaint in a subsequent state court suit brought by Icon against Berstein. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

inter alia, attempting to review Icon's financial information, filing updated documents with the State, and working with a bank to transfer signing authority on Icon's account to himself, in his capacity as Icon's CEO and president; Icon, through counsel and at Dave's direction, notified Berstein it was no longer authorized to take any action on Icon's behalf; and, notwithstanding that advisement, Berstein persisted in purporting to take action on Icon's behalf. Regarding the latter, Berstein purportedly advised the Icon employee "on how to keep Dave from having access [to] or control [of Icon]," "communicat[ed] with third parties as to the current status of [Icon]," and filed documents in the federal action.

Two days after the filing of the state action, Icon, acting through Berstein in the federal action, sought an ex parte temporary restraining order (TRO) and a preliminary injunction enjoining Dave from exercising control over Icon. In granting the TRO, the district court found Icon demonstrated a reasonable likelihood of success on its breach of fiduciary duty claims through "evidence that . . . Dave . . . engaged in misconduct including the embezzlement of corporate funds and theft of Icon's customer's intellectual property." It further concluded that declining to issue the TRO would likely result in both identifiable and unquantifiable irreparable harm to Icon, that the balance of the hardships tipped in Icon's favor, and that issuance of the TRO was necessary to maintain the status quo. In relevant part, the resulting TRO prohibited Dave, as well as his agents, attorneys, and any person acting in concert with him, from "[r]epresenting to any third-party that [Dave] [had] authority and/or control and/or the right to act on behalf of [Icon]." Dave's counsel in the federal action informed Cohen of the TRO, and Cohen took no further steps in the state action while awaiting the federal court's ultimate determination of Icon's ownership and control.

4

Over the course of the ensuing months, a series of events led to resolution of the federal action, such that the district court never adjudicated Icon's preliminary injunction request. First, the district court granted Dave and his wife's motion for judgment on the pleadings based on Icon being an improper plaintiff, and granted Icon leave to amend the complaint to, among other things, substitute in a proper plaintiff. Second, it ordered the parties to mediation. The mediation led to a settlement, part of which involved Dave relinquishing his ownership interest in Icon.

On December 20, 2021, Cohen received a letter from another law firm representing Icon. It notified Cohen of the federal action settlement and directed Cohen, at Icon's request, to dismiss the state action with prejudice. About one week later, Cohen filed a request for such a dismissal and the court clerk entered it.

Roughly ten months later, Berstein filed the instant suit against Cohen. The complaint alleges causes of action for malicious prosecution, abuse of process, defamation, trade libel, and unfair competition, all of which are tied to Cohen's involvement in the state action.

Cohen responded by filing an anti-SLAPP motion to strike the entirety of the complaint. It argued all causes of action fell within the scope of the anti-SLAPP statute and Berstein could not demonstrate the minimal merit of its claims. Berstein opposed the motion, focusing solely on the merits of the malicious prosecution cause of action. From its perspective, evidence offered in a contemporaneously filed declaration demonstrated it could establish all elements of malicious prosecution.

After holding a hearing and taking the matter under submission, the trial court issued an order partially granting, and partially denying, the anti-SLAPP motion, with the denial relating to malicious prosecution. The

5

court determined all causes of action fell within the scope of the anti-SLAPP statute, concluded Berstein demonstrated a reasonable probability of prevailing on the merits of the malicious prosecution claim, and found Berstein failed to present any argument about the merit of its other causes of action.

Cohen timely appealed.

## DISCUSSION

Cohen challenges the trial court's determination that Berstein demonstrated the requisite minimal merit of the malicious prosecution cause of action. Cohen contends termination of the state action was not favorable to Berstein, there was probable cause to file the state action, and there is no evidence of malice. Because failure to make a prima facie showing as to a single element of a cause of action is fatal to an anti-SLAPP opposition, we begin and end our analysis with probable cause. Berstein does not establish any reasonable attorney would have believed the state action was entirely without merit. That failure means Berstein failed to establish the requisite minimal merit of the malicious prosecution claim and the anti-SLAPP motion should have been granted in full.

I.

ANTI-SLAPP LEGAL PRINCIPLES AND STANDARD OF REVIEW

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) The statute sets forth the four categories of protected activity. (Code Civ. Proc., § 425.16, subd. (e).)

6

"Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni, supra*, 11 Cal.5th at p. 1009.) This step of the anti-SLAPP analysis "has been described as a summary-judgment-like procedure. [Citation.] The court determines whether "'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment."' [Citation.] The plaintiff "'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence."' [Citation.] The defendant may submit evidence in support of its motion. [Citation.] However, "'[t]he court does not weigh evidence or resolve conflicting factual claims."' [Citation.] Rather, the court "'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed."'" (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962 (*Billauer*).) Conversely, "[i]f the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, at p. 1009.)

"On appeal, we review [an anti-SLAPP] motion de novo and independently determine whether the parties have met their respective burdens." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371.) We employ the same two-step process used by the trial court. (*Billauer, supra*, 88 Cal.App.5th at p. 962.) "'Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Ibid*.)

## II.

### PROBABILITY OF PREVAILING ON THE MERITS

"Three elements must be pleaded and proved to establish the tort of malicious prosecution: (1) A lawsuit was ""commenced by or at the direction of the defendant [which] was pursued to a legal termination in . . . plaintiff's . . . favor""; (2) the prior lawsuit ""was brought without probable cause""; and (3) the prior lawsuit ""was initiated with malice."""" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 216.)

Regarding the second element, "[p]robable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed. '[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." [Citation.] This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." [Citation.] Attorneys and litigants . . . "'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .'" [Citation.] Only those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit." (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047–1048.) Probable cause is a legal issue to be resolved by the court. (*Ibid.*) And because it is an objective element, the adequacy of an attorney's research is not relevant. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 883.)

Berstein first relies on the litigation privilege to explain why there was no probable cause to bring the state action. It argues "there is no

doubt any action taken by [it] was fully covered by [the] privilege." We disagree.

"The litigation privilege protects attorneys, judges, jurors, witnesses, and other court personnel from tort liability for any 'publication or broadcast' made '[i]n any . . . judicial proceeding . . . .' [Citations.] Under the "'usual formulation,'" the litigation "'privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.""" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540–1541 (*Kolar*).)

Important to our evaluation is an understanding of the allegations in the state action. The complaint alleged that after Scott's death, Dave was the sole remaining director and, pursuant to Icon's bylaws, appointed himself CEO, secretary and chief financial officer of Icon. In those capacities, he was allegedly the only one with authority to exercise corporate powers over Icon. Despite Dave informing Berstein of his status and twice directing Berstein to no longer take action on Icon's behalf, Berstein supposedly continued to do so. It purportedly "advis[ed] [the Icon employee] on how to keep Dave from having access or control to [Icon]; fil[ed] documents in the [f]ederal [action]; and communicat[ed] with third parties as to the current status of [Icon]."

In characterizing these alleged actions as "communicative conduct related to [its] representation of Icon in the [f]ederal [a]ction," Berstein overlooks at least two critical matters. First, the litigation privilege does not apply to a malpractice action brought against an attorney, here Berstein, by its client, here Icon. (*Kolar, supra*, 145 Cal.App.4th at p. 1541;

9

*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1173–1174.) If it did, no malpractice suit could be brought. (*Kolar,* at p. 1541.) Second, the gravamen of the state action claims was Berstein acted without authority from Icon. Acting without client authorization would mean the acts it engaged in were not done by a ""litigant[] or other participant[] authorized by law."" (*Id.* at p. 1540) Notably, there was no evidence submitted which would have led a reasonable attorney to conclusively understand Berstein was authorized to represent Icon after Scott's passing.

Separately, Berstein argues there was a lack of probable cause to maintain the state action because Cohen "relied on facts [it] had no reasonable cause to believe to be true." To support this argument, Berstein relies on documents it filed in the federal action two days after the filing of the state action. Berstein contends the documents, which include the TRO and preliminary injunction application and supporting evidence, demonstrated "it was actually Dave . . . that represented an immediate risk of irreparable harm to Icon," not Berstein or the Icon employee.

Because Berstein did not make this argument below, instead relying solely on the litigation privilege to establish a lack of probable cause, it is foreclosed from raising it for the first time on appeal. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in trial court generally cannot be raised for first time on appeal].) And even if we exercise our discretion to consider it (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275, fn. 3 [whether appellate court entertains issue of law raised for first time on appeal rests within court's discretion]), we are not persuaded. Arguments in pleadings and supporting evidence are but one side's version of purportedly relevant circumstances. Further, nothing in the documents would have led a reasonable person to

believe Dave did not have authority to act on Icon's behalf. The TRO and preliminary injunction application sought to prevent Dave from exercising control of Icon because he was an alleged threat to Icon's best interests, not because he lacked authority to exercise such control. In that vein, the evidence submitted in support thereof concerned Dave's alleged bad acts vis-à-vis Icon's business and finances, such as the purported embezzlement of funds, misappropriation of intellectual property, and interference with Icon's business relationship with its clients.

Because Berstein failed to demonstrate a lack of probable cause for bringing and maintaining the state action, it necessarily did not meet its burden of establishing the minimal merit of the malicious prosecution cause of action. Accordingly, the anti-SLAPP motion should have been granted regarding that claim, and it was error for the trial court to do otherwise.

## DISPOSITION

The order partially denying the anti-SLAPP motion is reversed. On remand, the trial court shall vacate the July 11, 2023 anti-SLAPP motion related order and enter a new order granting the anti-SLAPP motion in its entirety. Cohen is entitled to costs on appeal.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

11