Filed 9/30/13  Tulare Sag, Inc. v. Keller, Fishback & Jackson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TULARE SAG, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KELLER, FISHBACK & JACKSON, LLP et al., <br><br> Defendants and Appellants. | F064726 <br><br> (Super. Ct. No. VCU244256) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Melinda M. Reed, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth, Marshall C. Whitney, Todd W. Baxter and Scott M. Reddie for Defendants and Appellants.

Law Offices of Michael J. Lampe, Michael J. Lampe and Michael P. Smith for Plaintiff and Respondent.

-ooOoo-

Appellants, Keller, Fishback and Jackson, LLP, Stephen M. Fishback, Diran H. Tashjian, and J. Bruce Jackson (Keller Fishback), challenge the trial court's denial of

their motion to strike the malicious prosecution action filed by respondent, Tulare SAG, Inc., doing business as Lampe Dodge-Chrysler-Jeep (Lampe Dodge), as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure[1] section 425.16.  According to Keller Fishback, Lampe Dodge did not meet its burden of establishing a probability of prevailing on its claim.

Lampe Dodge's malicious prosecution claim arose out of a wrongful death action prosecuted by Keller Fishback on behalf of the heir of a decedent who died as a result of asbestos exposure.  The asbestos complaint alleged that the decedent was improperly exposed to asbestos while working as an automobile mechanic and that Lampe Dodge was directly liable as a seller of asbestos containing automobile parts.  On the day before trial, Keller Fishback stipulated there was no evidence that Lampe Dodge was directly liable and moved to amend the complaint to state a theory of successor liability.  The trial court denied the motion to amend and dismissed the complaint.  Thereafter, Lampe Dodge filed the underlying complaint for malicious prosecution.

Keller Fishback contends Lampe Dodge did not establish the elements of a malicious prosecution claim because: the asbestos action was not terminated on the merits; Keller Fishback had reasonable cause to continue pursuing the asbestos action; and Keller Fishback did not act with malice.  Contrary to Keller Fishback's position, Lampe Dodge established that its claim has at least minimal merit.  Therefore, the order denying the motion to strike will be affirmed.

## BACKGROUND

In November 2007, Joann Hardeman, individually and as successor-in-interest to the Estate of Leonard Lee Hardeman, filed a wrongful death action against numerous

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2.

entities alleging that between 1954 and 1997, Leonard Hardeman was improperly exposed to asbestos and that this exposure led to his death. Keller Fishback did not prepare this complaint. Rather, Keller Fishback substituted into the action as attorney of record in April 2008.

The complaint named "Lampe Chrysler-Dodge fka Brian Ross Chrysler-Dodge" as one of the defendants in 15 separate causes of action. These causes of action included damage claims for direct sales, negligence, strict liability, failure to warn, breach of warranties, fraud, civil conspiracy, enterprise liability, loss of consortium and wrongful death. The alleged liability was based on Leonard Hardeman having purchased automotive parts from Brian Ross Dodge-Chrysler in the 1990's.

However, in 2000, Brian Ross Dodge-Chrysler was sold to Don Groppetti and became Tulare Chrysler Dodge Jeep. Then, in 2005, through an "Agreement for the Purchase and Sale of Assets" (Agreement), Lampe Dodge purchased Tulare Chrysler Dodge Jeep's assets from Groppetti.

The assets purchased by Lampe Dodge included parts and accessories, fixed assets, new vehicles, and the dealership's good will and trade name. The parties also agreed that the "transfer, purchase, or assumption whatsoever of any asset or liability other than those specifically enumerated" was not contemplated. It was further agreed that Groppetti "shall retain all assets and liabilities other than those enumerated" in the agreement and that Groppetti "shall continue to be liable for and shall indemnify, defend and hold harmless [Lampe Dodge] from any and all of [Groppetti's] obligations and liabilities other than those which [Lampe Dodge] has agreed herein to assume."

In January 2009, counsel for Lampe Dodge requested that Keller Fishback dismiss Lampe Dodge from the complaint. Keller Fishback responded on January 27 that they needed to conduct discovery before deciding whether dismissal was warranted. On January 28, counsel for Lampe Dodge replied. Counsel explained that Lampe Dodge did

3.

not exist at the time of the asbestos exposure and that it was not liable as a successor in interest because it acquired the dealership through an asset purchase. Lampe Dodge also stated it might be willing to waive costs and waive its malicious prosecution claim if Keller Fishback responded with an offer to dismiss. Keller Fishback responded that they could not rely on counsel's bare assertions to evaluate Lampe Dodge's liability and requested that Lampe Dodge produce the relevant documents.

When Keller Fishback had not received the requested documents by October 21, 2009, they served formal discovery on Lampe Dodge. By letter dated October 22, 2009, counsel with Keller Fishback explained that they needed to evaluate admissible evidence establishing that Lampe Dodge had not assumed any liabilities of Brian Ross Dodge "or other relevant entities, especially in light of the fact that [Lampe Dodge's] business operations continue at the same location in which former Dodge-Chrysler-Jeep dealerships have been located, and from which asbestos-containing automotive parts were purchased."

Nevertheless, during a telephone conversation with counsel for Lampe Dodge on October 29, 2009, Keller Fishback offered to dismiss Lampe Dodge in exchange for a waiver of costs. Counsel with Keller Fishback explained that, although the plaintiff had potential theories of recovery against Lampe Dodge under a successor in interest and/or product line theory, a cost benefit analysis indicated it would make the most economic sense to dismiss Lampe Dodge. Lampe Dodge rejected this offer.

On January 11, 2010, counsel for Lampe Dodge provided Keller Fishback with a copy of the Agreement. However, the dollar amounts were redacted and the referenced exhibits were not provided. Because the copy of the Agreement provided by Lampe Dodge was incomplete, Keller Fishback felt they could not determine whether the Agreement supported Lampe Dodge's position. Accordingly, Keller Fishback continued with discovery.

4.

On January 29, 2010, counsel for Lampe Dodge filed a motion to impose monetary sanctions against Keller Fishback and the plaintiff under section 128.7 based on their refusal to dismiss Lampe Dodge. At the March 9, 2010, hearing on this motion, the trial court observed that the paragraph in the Agreement stating that Lampe Dodge did not assume any liabilities that were not specifically enumerated "shows that [Lampe Dodge] couldn't possibly have any liability here." Regarding the missing exhibits, the court noted it was "not sure anything in those exhibits could possibly be pertinent …." Nevertheless, the trial court denied the motion without prejudice on the grounds that the Agreement was not given to the plaintiff until January 11 and the attachments to the Agreement were missing. The court then suggested that the attachments be provided to Keller Fishback. Thereafter, counsel for Lampe Dodge learned that the exhibits referenced in the Agreement had never been prepared.

On January 7, 2011, Lampe Dodge moved for summary judgment. The trial court denied this motion because the Agreement was not authenticated. The court also found that Lampe Dodge had not met its initial burden on the dates of exposure at the dealership.

On August 23, 2011, the day before trial, Keller Fishback stated that they would not be offering any evidence as to direct liability of Lampe Dodge. Keller Fishback explained that "the only liability that is claimed as to the defendant Lampe Dodge is by way of the contention that they are successor of interest." However, the complaint did not allege successor liability against Lampe Dodge.

On August 24, 2011, the first day of trial, Keller Fishback moved to amend the complaint to conform to proof in order to present evidence on successor in interest liability claims. Keller Fishback explained that it wanted to proceed on the theory that Lampe Dodge impliedly agreed to assume Brian Ross Dodge-Chrysler's liability. The trial court denied the motion and dismissed the action.

5.

Thereafter, Lampe Dodge filed the underlying complaint for malicious prosecution against Keller Fishback. Keller Fishback filed a motion to dismiss the complaint as a SLAPP. Lampe Dodge conceded that the malicious prosecution action was subject to the anti-SLAPP law. The court then concluded that Lampe Dodge had met its burden of showing a probability of prevailing on its claim and denied the motion.

## DISCUSSION

### 1. *The anti-SLAPP statute.*

Section 425.16 was enacted in 1992 to provide a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.) It is California's response to meritless lawsuits brought to harass those who have exercised these rights. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 644, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68.) This type of suit, referred to under the acronym SLAPP, or strategic lawsuits against public participation, is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927.)

When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)

The court first decides "whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity." (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 76.) The moving defendant must demonstrate that the

6.

act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue ....'" (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) If the court concludes that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

To establish the requisite probability of prevailing, the plaintiff need only have "'"stated and substantiated a legally sufficient claim."'" (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Id.* at pp. 88-89.) The plaintiff need only establish that his or her claim has minimal merit to avoid being stricken as a SLAPP. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) The court neither weighs credibility nor evaluates the weight of the evidence. Instead, the court accepts as true all evidence favorable to the plaintiff and assesses the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) Nevertheless, a plaintiff cannot simply rely on his or her pleadings, even if verified. Rather, the plaintiff must adduce competent, admissible evidence. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614.)

The questions of whether the action is a SLAPP suit and whether the plaintiff has shown a probability of prevailing are reviewed independently on appeal. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

Here, the parties do not dispute that the malicious prosecution action arose from a protected activity. Thus, this appeal turns on whether Lampe Dodge presented evidence that, if believed by the trier of fact, is sufficient to support a judgment in its favor.

## 2. *Malicious prosecution.*

To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought or continued without probable cause; and (3) was initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965, 970 (*Zamos*).) Keller Fishback asserts that Lampe Dodge did not demonstrate a probability of prevailing on any of these elements.

### a. *Lampe Dodge demonstrated that it achieved a favorable termination.*

To determine whether the malicious prosecution plaintiff received a favorable termination, the court considers the judgment as a whole in the prior action. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 (*Casa Herrera*).) However, victory following a trial on the merits is not required. Rather, the termination simply must reflect the merits of the action and indicate that the plaintiff is innocent of the alleged misconduct. (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741.)

Where, as here, a termination is by dismissal, it is favorable when it reflects the opinion of either the trial court or the prosecuting party that the action lacked merit or if pursued would result in a decision in favor of the defendant. (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056.) Thus, the reasons for the dismissal must be examined. For example, a voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action. (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1524.) However, a technical or procedural termination, reflecting on neither innocence of nor responsibility for the alleged misconduct, is not favorable for purposes of a malicious prosecution claim.

(*Casa Herrera, supra,* 32 Cal.4th at pp. 341-342.) Examples of technical or procedural dismissals include dismissals on statute of limitations grounds, pursuant to a settlement, or based on laches. (*Ibid.*)

Keller Fishback argues the dismissal of its complaint was procedural. According to Keller Fishback, Lampe Dodge did not achieve a favorable termination on the merits because the dismissal was based on the trial court's refusal to permit Keller Fishback to amend its complaint to state a claim based on successor liability on the first day of trial. The trial court concluded Keller Fishback's motion to amend the complaint was untimely and prejudicial to Lampe Dodge.

However, Keller Fishback had been prosecuting the underlying action against Lampe Dodge for approximately 3 years and 4 months. The day before trial, Keller Fishback informed the court that they would be proceeding on only two of the 15 causes of action against Lampe Dodge. Those two remaining causes of action were for negligence and strict products liability. The court commented that Keller Fishback would be dismissing the other 13 causes of action with prejudice the next day at the beginning of trial. The complaint did not state a cause of action against Lampe Dodge based on successor liability.

The day of trial, Keller Fishback conceded that they had no evidence of direct liability against Lampe Dodge. Accordingly, the trial court dismissed the complaint. Thus, the *entire* action was terminated in Lampe Dodge's favor. This dismissal was not procedural but, rather, reflected the opinion of both Keller Fishback and the court that the action *as it stood* lacked merit. Keller Fishback's argument that their successor liability claim would have been tenable goes to the issue of probable cause, not whether the prior action was terminated favorably. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686.)

9.

In sum, the judgment was in Lampe Dodge's favor on the merits and reflects that Lampe Dodge was innocent of the *alleged* misconduct. Thus, Lampe Dodge has met the favorable termination requirement.

**b.** ***Lampe Dodge established a prima facie showing that Keller Fishback lacked probable cause to prosecute the asbestos action against it.***

In a malicious prosecution case, the existence or nonexistence of probable cause is a legal question to be resolved by the court. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817.) This determination is made objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable. (*Ibid.*) The standard of probable cause to bring a civil suit is equivalent to that for determining the frivolousness of an appeal. Accordingly, "probable cause exists if 'any reasonable attorney would have thought the claim tenable.'" (*Ibid.*) Malicious prosecution also includes "continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos, supra,* 32 Cal.4th at p. 973.)

In analyzing probable cause in a malicious prosecution context, the court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1402 (*Sycamore Ridge*).) Litigants will lack probable cause for their action either if they rely upon facts that they have no reasonable cause to believe to be true, or if they seek recovery upon a legal theory that is untenable under the facts known to them. (*Ibid.*) Thus, to make a prima facie case of a lack of probable cause in response to the anti-SLAPP motion, Lampe Dodge must show no reasonable attorney would have thought the asbestos related action against Lampe Dodge was tenable in light of the facts known to Keller Fishback at the time Keller Fishback began prosecuting the case or that Keller Fishback continued pursuing the lawsuit after they discovered facts that would

10.

lead a reasonable attorney to conclude the action was not tenable. (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449.)

Keller Fishback argues they had probable cause to pursue the asbestos action based on a successor in interest theory. According to Keller Fishback, it was reasonable for them to conclude that Lampe Dodge impliedly assumed the liabilities of Brian Ross Dodge-Chrysler for injuries related to the sale of asbestos containing products. Keller Fishback further contends that a product line theory of successor liability under *Ray v. Alad Corp.* (1977) 19 Cal.3d 22 (*Ray*) and *Kaminski v. Western MacArthur Co.* (1985) 175 Cal.App.3d 445 (*Kaminski*) was legally tenable.

The facts known to Keller Fishback were that: the decedent purchased the allegedly defective automobile parts from Brian Ross Dodge-Chrysler; in 2000, Brian Ross Dodge-Chrysler was sold to Groppetti and became Tulare Chrysler Dodge Jeep; in 2005, Lampe Dodge purchased Tulare Chrysler Dodge Jeep's assets from Groppetti; the agreement between Groppetti and Lampe Dodge provided that Groppetti "shall retain all assets and liabilities other than those enumerated" in the agreement and that Groppetti "shall continue to be liable for and shall indemnify, defend and hold harmless [Lampe Dodge] from any and all of [Groppetti's] obligations and liabilities other than those which [Lampe Dodge] has agreed herein to assume"; and the agreement between Lampe Dodge and Groppetti did not specifically mention, and Lampe Dodge did not agree to assume, liabilities related to the sale of asbestos containing products.

In general, when a corporation purchases the principal assets of another corporation, the purchaser does not assume the seller's liabilities unless "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray, supra,* 19 Cal.3d at p. 28.) In

11.

*Ray*, the court announced an exception to these traditional rules in the context of imposing strict tort liability on a successor manufacturer. The court found that imposing strict liability is justified where (1) the plaintiff's remedies against the original manufacturer are virtually destroyed by the successor's acquisition of the business, (2) the successor has the ability to assume the original manufacturer's risk-spreading role, and (3) it is fair to require the successor to assume responsibility for defective products that were a burden necessarily attached to the original manufacturer's good will that the successor is enjoying in the continued operation of the business. (*Ray, supra,* 19 Cal.3d at p. 31.) This theory has been referred to by some subsequent courts as the "'product line theory' or the 'product line continuation theory.'" (*Phillips v. Cooper Laboratories* (1989) 215 Cal.App.3d 1648, 1654 (*Phillips*).)

In *Kaminski*, the court imposed successor liability under *Ray* on a distributor of defective products. There, the predecessor corporation was completely taken over by the successor. The successor assumed the predecessor's contracts, continued to supply the same products and services, employed the same personnel, and used the predecessor's customer lists in conducting its new business. When it was formed, the successor corporation sent a letter to the predecessor's customers "asking if it may 'continue to serve' them, stressing that the new company had 'the same experienced personnel' and offered 'the same products, engineering and contracting services.'" (*Kaminski, supra,* 175 Cal.App.3d at p. 453.) The court concluded that, given the policies underlying strict liability, "the 'stream of commerce' approach to liability should extend to successor entities. When a distributor or retailer acquires a corporation and takes advantage of its goodwill and other corporate assets and facilities to inject the predecessor's product line into the stream of commerce, it continues 'the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.'" (*Id*. at p. 456.)

12.

The successor does not have to "cause" the destruction of the plaintiff's remedies before it will be held liable. A causal connection between the successor's acquisition and the unavailability of the predecessor as a potential defendant is all that is required. (*Stewart v. Telex Communications, Inc.* (1991) 1 Cal.App.4th 190, 198-199.) "The successor need only have 'played some role in curtailing or destroying the [plaintiff's] remedies.'" (*Kaminski, supra,* 175 Cal.App.3d at p. 458.) Nevertheless, successor liability has generally been denied in situations showing no contributory cause on the part of the successor in the predecessor's demise. (*Ibid.*) Moreover, in order to impose liability upon a successor corporation, all three of the *Ray* prongs must be met. (*Phillips, supra,* 215 Cal.App.3d at p. 1657.)

Here, based on the facts submitted by Lampe Dodge, the first element under *Ray*, i.e., the virtual destruction of the plaintiff's remedies against Brian Ross Dodge-Chrysler caused by Lampe Dodge's acquisition, is missing. It was Groppetti who purchased the Brian Ross Dodge-Chrysler assets, not Lampe Dodge. Thus, Lampe Dodge did not contribute to Brian Ross Dodge-Chrysler's demise.

Keller Fishback also could not proceed with the asbestos action on the theory that Lampe Dodge impliedly assumed liability for asbestos related injuries. The Agreement under which Lampe Dodge acquired the business assets expressly excluded the transfer of liabilities.

Keller Fishback additionally argues that the trial court's denial of Lampe Dodge's motion for summary judgment establishes that the successor liability claim was arguably tenable. While denial of a defendant's summary judgment motion may provide evidence that a suit does not totally lack merit, a denial on procedural or technical grounds, rather than for the existence of triable issues of material fact, says nothing regarding the potential merit of the action and thus does not establish probable cause for its initiation. (*Wilson, supra,* 28 Cal.4th at p. 823.)

13.

Here, Lampe Dodge's summary judgment motion was denied because the Agreement was not authenticated and Lampe Dodge had not met its initial burden on the dates of exposure at the dealership, not because there were triable issues of material fact. Thus, the denial of Lampe Dodge's summary judgment motion does not demonstrate that Keller Fishback had probable cause to prosecute the asbestos action.

Therefore, viewing the evidence in the light most favorable to Lampe Dodge, Lampe Dodge's claim that Keller Fishback lacked probable cause to continue to prosecute the asbestos action has at least minimal merit.

**c.** ***Lampe Dodge made a prima facie showing that Keller Fishback acted with malice.***

The malice element goes to the defendant's subjective intent in initiating the prior action or continuing to prosecute the prior action after becoming aware that it lacks probable cause. (*Sycamore Ridge, supra,* 157 Cal.App.4th at p. 1407; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226 (*Daniels*).) "For purposes of a malicious prosecution claim, malice 'is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose.'" (*Sycamore Ridge, supra,* 157 Cal.App.4th at p. 1407.) Liability can attach based on attitudes that range from "'"open hostility to indifference."'" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1113-1114 (*Cole*).)

Malice may be inferred from circumstantial evidence, such as the defendants' lack of probable cause, supplemented with evidence of an improper purpose. (*Cole, supra,* 206 Cal.App.4th at p. 1114.) Hallmarks of an improper purpose include evidence that the plaintiff does not believe his claim may be held valid and that the proceeding was initiated for the purpose of forcing a settlement unrelated to the merits of the claim. (*Ibid.*) Further, although lack of probable cause standing alone does not support an inference of malice, malice may still be inferred when a party either *knowingly* brings an

14.

action without probable cause or *continues* to prosecute an action after becoming aware that the action lacks probable cause.  (*Daniels, supra,* 182 Cal.App.4th at p. 226.)

Here, the individual Keller Fishback attorneys filed declarations stating that they harbored no hostility or ill will toward Lampe Dodge, that they believed their actions were reasonable, appropriate and within the applicable standard of care, and that they at all times believed their client had a viable and legitimate claim for damages against Lampe Dodge.  However, parties rarely admit to an improper motive.  (*Daniels, supra,* 182 Cal.App.4th at p. 225.)  Accordingly, we must determine if there is circumstantial evidence, and inferences that can be drawn from that evidence, of malice.  (*Ibid.*)

On the first day of trial, Keller Fishback conceded that they had no evidence of direct liability against Lampe Dodge but, rather, wanted to proceed on a successor in interest theory.  But, over 17 months earlier, the trial court questioned the viability of such a successor liability theory.  The court noted that, based on the Agreement between Lampe Dodge and Groppetti, Lampe Dodge "couldn't possibly have any liability here."  Keller Fishback responded that they had not seen the attachments to the Agreement and therefore could not yet make that determination.  The court then observed that the missing exhibits, i.e., lists describing the parts and accessories inventory, work in progress sublet repairs, the fixed assets, the vehicle deposits, and the lease agreement, had nothing to do with Lampe Dodge's liability to Keller Fishback's clients.  The court questioned whether anything in those documents "could possibly be pertinent."  Thereafter, counsel for Lampe Dodge discovered that those exhibits had never been prepared.  Nevertheless, despite the trial court's input, Keller Fishback did not dismiss Lampe Dodge from the case.

From this evidence it can be inferred that Keller Fishback continued to prosecute the asbestos action after becoming aware that the action lacked probable cause.  Thus, viewing the evidence in the light most favorable to Lampe Dodge, Lampe Dodge's claim

15.

that Keller Fishback acted with malice has at least minimal merit.  (*Soukup, supra,* 39 Cal.4th at p. 291.)

In sum, in opposing the anti-SLAPP motion, Lampe Dodge met its burden of showing that its malicious prosecution action had sufficient merit to survive the motion. By our conclusion, we express no opinion on the ultimate merit of Lampe Dodge's claim.[2]

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to respondent.

_____
LEVY, J.

WE CONCUR:


_____
WISEMAN, Acting P.J.


_____
KANE, J.

---

[2]      Respondent's motion for judicial notice is denied.

16.