Filed 2/5/16  Frymer v. Castle & Assocs. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DAVID FRYMER et al., | B262022 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC532875) |
| v. | |
| CASTLE & ASSOCIATES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa Sanchez-Gordon, Judge.  Reversed and remanded.

Law Offices of Martina A. Silas and Martina A. Silas, for Plaintiffs and Appellants.

Winget Spadafora Schwartzberg, Brandon S. Reif, Jeffrey F. Kagan, Marc S. Ehrlich, and Elizabeth M. Treckler, for Defendants and Respondents.

_____

In this malicious prosecution case, David Frymer and Frymer Development, Inc. (hereafter, Frymer Development) appeal from an order granting the anti-SLAPP[1] special motion to strike appellants' complaint (Code Civ. Proc., § 425.16.) filed by respondent attorneys Nomi Castle and Matthew Luce, and their law firm, Castle & Associates. Appellants have made the requisite showing that the fraud and negligent misrepresentation claims asserted against them in an earlier lawsuit were made without probable cause and with malice, and that they suffered damages as a result. We, therefore, reverse the order and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL SUMMARY

On May 2, 2005, non-parties Palazzo Margot, LLC (also known as Wilshire Margot, LLC; hereafter, Wilshire) and Taisei Construction Corporation (hereafter, Taisei) entered into an agreement, under which Taisei was to construct an apartment building on Wilshire's land. Frymer, President of Frymer Development, was separately retained to monitor the progress of construction on behalf of Wilshire. The project resulted in a multitude of lawsuits by and against various individuals and entities; the lawsuits were related and consolidated over the years and eventually resulted in a global settlement of all remaining claims.

As relevant here, in March 2009, respondents filed a complaint on behalf of Taisei against Wilshire for breach of contract, quantum meruit and account stated, alleging the project had been complicated by change orders and Wilshire had failed to fully pay Taisei for labor and materials. In April 2009, Wilshire filed a cross-complaint in a related case for contractual fraud, breach of contract, and negligence against Taisei and other defendants. The cross-complaint, which was amended several times, alleged numerous construction defects.

In October 2010, respondents filed a first amended complaint on behalf of Taisei (hereafter, the Taisei complaint), which asserted additional claims for fraud and negligent

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 (*Jarrow*).)

misrepresentation. Wilshire was alleged to have made the following representations: 1) that it would compensate Taisei in full for the construction project, including any delays and disruptions; 2) that it would promptly release amounts withheld during construction; 3) that it would abide by specifications attached to change order no. 16, signed in December 2005; and 4) that it would not hinder the timeliness of the project when it took over the glass and glazing subcontract by change order no. 67, signed in August 2006. Wilshire allegedly did not intend to keep these promises, but rather intended to withhold payment by "fabricat[ing] sham grounds." Wilshire's President Neil Shekhter and another entity, NMS Properties, which was named as Wilshire's alter ego and managing agent, were alleged to have aided and abetted Wilshire in defrauding Taisei by making the same representations. The allegations were repeated verbatim as to appellants Frymer and Frymer Development, who were named as alter egos of each other (but not of Wilshire) and were alleged to have been the project's construction manager and Wilshire's managing agent. The same allegations also were used to support the claim for negligent misrepresentation, except that the representations were alleged to have been made "without any reasonable basis for believing them to be true."

Respondents represented Taisei in the action against appellants until April 2012, when two attorneys at the Hollins Law firm substituted in as Taisei's new counsel. In December 2012, appellants served a motion for sanctions on Taisei and its new counsel for pursuing a frivolous case against appellants (Code Civ. Proc., § 128.7), and moved for summary judgment. Appellants argued the claims were legally insufficient because they were based on Wilshire's breach of its contractual obligations, and the aiding and abetting claim was premised on appellants' acts as Wilshire's agents. Appellants also argued there was no evidence they had made the alleged misrepresentations. Specifically, appellants relied on Taisei's responses to special interrogatories which appellants served on Taisei after respondents had substituted out of the case. The responses failed to identify any witness to whom appellants made representations; instead, they conclusorily stated that appellants "worked hand in hand with [Shekhter] to . . . fabricate sham grounds for non-payment in order to get the project at an ill-begotten

3

discount." Appellants also cited the deposition testimony of Taisei's Senior Vice President, Emery Molnar, which, too, was taken after respondents had left the case. Molnar, the sole person responsible for negotiating the contract with Wilshire, denied Frymer had made any promises or misrepresentations during contract negotiations.

On January 14, 2013, within the safe harbor period of Code of Civil Procedure section 128.7, subdivision (c)(1) and before its opposition to the summary judgment motion was due, Taisei dismissed its complaint against appellants without prejudice. In May 2013, the parties to the various lawsuits stemming from the construction project globally settled their remaining claims. Under the terms of the settlement, an insurer, on behalf of Wilshire, was to pay Frymer Development $180,000 "for defense costs and fees related to the [a]ctions," which included Frymer Development's cross-complaint for indemnity against Wilshire based on a subcontractor's claim. Wilshire was to receive $18,301,000, of which it was to pay Taisei $301,000. The mutual releases included in the settlement specifically excepted any claims by appellants for malicious prosecution against respondents and Taisei's substitute counsel arising from the Taisei complaint against appellants.

On January 10, 2014, within a year after Taisei dismissed its claims against appellants, appellants sued respondents and the attorneys at the Hollins Law firm for malicious prosecution. Respondents filed an anti-SLAPP motion, in which they argued: the malicious prosecution action was barred by the statute of limitations, respondents had probable cause to sue appellants on behalf of Taisei and did so without malice, the underlying case did not end in appellants' favor, and appellants suffered no damages because their defense costs were covered in the global settlement.

In support of the motion, Luce filed a declaration averring that he was informed by Taisei that it believed Frymer Development was a "captive company" of Wilshire's owner, Shekhter, and was partially owned or controlled by him; that when the glazing subcontractor had to be replaced, Wilshire and appellants proposed to take over the work, as reflected in change order no. 67, and promised that they would not hinder Taisei's ability to finish construction in a timely manner; and that Wilshire and appellants

4

subsequently used delays arising from that change order to withhold money owed Taisei. The court sustained appellants' objections that these statements consisted of unattributed hearsay and were irrelevant absent an identification of the Taisei representative who made them. The court overruled appellant's objections to Luce's averments that Frymer Development was Wilshire's construction manager on the project, and that Frymer "was 'alleged to be the alter-ego of Frymer Development.'"

In opposing the anti-SLAPP motion, appellants relied on evidence they had used in support of the motion for sanctions in the underlying case. Specifically, they highlighted Molnar's responsibility to negotiate the contract with Wilshire and approve any change orders and his denial that Frymer made any representations during contract negotiations. In addition, Frymer submitted a declaration, stating he was present during some parts of the contract negotiations "in the event there was a technical construction question." He denied making any of the alleged representations, playing any direct role in contract negotiations, having any decision-making authority regarding payment or non-payment under the contract, or aiding and abetting Wilshire in "fabricating sham grounds" to deny Taisei payment. He also denied that Frymer Development was owned or controlled by Shekhter. Appellants' attorney declared that respondents did not attend at least 24 depositions which took place during their tenure as counsel for Taisei and which appellant's attorney felt she was required to attend or monitor because of the fraud allegations against her clients. She stated that appellants' attorney fees in defending against the Taisei complaint exceeded $275,000.

The court found that the underlying case had concluded favorably for appellants and the malicious prosecution action was timely.[2] However, it also found respondents had probable cause to sue appellants on behalf of Taisei and lacked malice in doing so because it was objectively reasonable to infer appellants were involved in negotiating the change orders from the fact that they managed the construction project for Wilshire. The

---

[2] Respondents do not challenge these findings on appeal.

5

court also found appellants had not suffered damages because they had been compensated under the global settlement agreement.

The court granted respondents' anti-SLAPP motion in a minute order, from which this appeal was taken.[3]

## DISCUSSION

### I

A cause of action arising from a defendant's act in furtherance of a constitutionally protected right of free speech may be stricken under the anti-SLAPP statute, unless the plaintiff is likely to prevail on the merits. (Code Civ. Proc., § 425.16, subd. (b)(1).) It is undisputed that a cause of action for malicious prosecution falls within the purview of that statute. The only issue in this case is whether appellants have demonstrated a probability of prevailing on the merits.

In reviewing the sufficiency of appellants' showing on that issue, we look at the pleadings and declarations, accepting as true the evidence that favors appellants and evaluating respondents' evidence "'only to determine if it has defeated that submitted by [appellants] as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) Appellants' action need have only "'minimal merit' [citation]" to survive an anti-SLAPP motion. (*Id.* at p. 291.)

### II

To prevail on the merits of their malicious prosecution action, appellants must demonstrate that the underlying case "(1) was commenced by or at the direction of the defendant[s] and was pursued to a legal termination favorable to [appellants]; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292.) They also may prevail by showing that respondents maliciously continued to prosecute the case against them without probable cause.

---

[3] The court acknowledged that an award of attorney fees is mandatory when a defendant prevails on an anti-SLAPP motion, but denied respondents' request for fees because they had not filed a supporting declaration.

6

(*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969, 973 (*Zamos*).)

On appeal, the parties dispute whether respondents initiated and continued to prosecute the Taisei complaint against appellants without probable cause and with malice, and whether appellants suffered damages as a result.

### A. *Lack of Probable Cause*

Probable cause exists when an action is based on facts reasonably believed to be true, and all asserted theories are legally tenable under those facts. (*Soukup*, *supra*, 39 Cal.4th at p. 292.) A malicious prosecution action lies if any theory or claim in the prior action was not supported by probable cause. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 56.) The test is whether, as an objective matter, "any reasonable attorney would have thought the claim tenable . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 886.) In determining whether a claim is tenable, we review a complaint liberally in favor of the pleader. (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1402; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 165 & fn. 7 ["'The factual allegations of the complaint are controlling over the title or label given the pleading'"].)

The Taisei complaint asserted that appellants aided and abetted Wilshire in "fabricating sham grounds" to deny Taisei payment, in defrauding Taisei by making knowingly false promises, and in making negligent promises, "without any reasonable basis for believing them to be true." "Liability based on an aiding and abetting or conspiracy theory is . . . 'derivative,' i.e., liability is imposed on one person for the direct acts of another." (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 579.) However, under the "agent's immunity" rule, an agent cannot be held liable for conspiring with or aiding and abetting the principal on whose behalf and for whose benefit the agent is acting. (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 817; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 78.) In addition, a negligent misrepresentation claim may not be based on a promise of future actions. (*Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458; *Magpali v. Farmers*

*Group, Inc.* (1996) 48 Cal.App.4th 471, 481–482; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158–159; *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30.) To the extent the complaint respondents filed on behalf of Taisei asserted that appellants had aided and abetted Wilshire by making representations while serving in an agency capacity or that they had made negligent promises of future performance, those theories were not legally tenable.

An agent is directly liable for its own torts and may be liable for promissory fraud committed "when acting under authority of [its] principal." (*Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1411–1412, quoting *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68.) A cause of action for promissory fraud requires the plaintiff to allege that the promissor did not intend to perform at the time the promise was made, that the promise was intended to deceive and induce reliance, that it did induce reliance, and that this reliance resulted in damages. (*Fleet*, at p. 1411, citing *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 637.) "To sufficiently plead . . . that the defendant made a promise, the complaint must state "'*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'" [Citation.]' [Citation.] . . . [T]he falsity of that promise is sufficiently pled with a general allegation the promise was made without an intention of performance. [Citation.]" (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)

The Taisei complaint alleged appellants made four "verbal representations" to Taisei: that Taisei would be paid in full, that amounts withheld during construction would be promptly released, that Wilshire would abide by change order no. 16, and that it would not prevent the timely completion of construction by taking over the glass subcontract. The representations were allegedly made on or about May 2 and December 29, 2005, the respective dates of the original contract and change order no. 16. Although appellants also were alleged to have made representations as to Wilshire's taking over the glass subcontract, which was the subject of change order no. 67 (signed in August 2006),

8

neither that change order nor its date was listed in the allegations asserted against appellants.[4]

The Taisei complaint did not specify the circumstances under which any of the alleged representations were made, the individuals to whom they were made, or the place or manner in which they were made. Rather, the same representations were attributed verbatim to several individuals and entities besides appellants. Even were we to liberally construe the Taisei complaint as asserting claims of direct, as well as aider and abettor, liability against appellants, as pled, the complaint gave no indication that respondents possessed specific information supporting those claims.[5]

Appellants have offered evidence that they were not parties to the contract or change orders (which were signed by Shekhter on behalf of Wilshire), were not involved in negotiating them, did not make any of the representations attributed to them, and had no authority on matters of payment. In support of the anti-SLAPP motion, respondents offered Luce's averments that he relied on information provided by his client, Taisei. However, the court sustained appellants' evidentiary objections to those averments, and on appeal, respondents do not challenge the correctness of the court's ruling on those objections; nor do they rely on the portion of Luce's declaration to which objections were sustained. We, therefore, do not consider that portion of the declaration. (See *Frittelli, Inc. v. 350 North Canon Drive*, *LP* (2011) 202 Cal.App.4th 35, 41 [party that fails to

---

[4] Appellants, therefore, proceed on the assumption that no allegations of fraud were based on change order no. 67 and provide no evidence specific to that order. As we shall explain, although Luce's declaration suggests he received information about appellants' involvement in Wilshire's taking over the glass contract, respondents do not rely on that portion of Luce's declaration on appeal.

[5] The Taisei complaint also conclusorily alleged that appellants aided and abetted Wilshire's "fabricating sham grounds" for nonpayment To the extent that is an independent allegation of fraud, it, too, lacks the requisite particularity regarding the circumstances under which payment was refused: who made the statements refusing payment and to whom, when they were made, what was actually stated, or why the grounds for refusing payment were false. (See *Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645.)

challenge trial court's evidentiary rulings on appeal forfeits any claim of error as to them].)

Respondents rely solely on the portion of Luce's declaration to which the court overruled appellants' objections—namely, that Frymer Development was the construction manager on the project. But that fact, by itself, cannot reasonably support the series of inferences on which the claim of promissory fraud was based—namely, that appellants were involved in negotiating the contract or change orders; that they made promises or representations on behalf of Wilshire; and that they knew Wilshire intended to withhold payments.

As we explained in *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, "[i]n a malicious prosecution case where the issue is the insufficiency of the facts known to the defendant, 'probable cause requires evidence sufficient to prevail in the action or at least information reasonably warranting an inference there is such evidence.' [Citation.] To be reasonable, an inference '""cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.""' [Citation.]" (*Id*. at p. 1113.) Because of the slanderous nature of the allegations of fraud, it is objectively unreasonable to file a speculative fraud claim. (See *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596.)

On the evidence before us, we conclude that appellants have made a prima facie showing that the Taisei complaint against them was brought without probable cause. Respondents had no information that implicated appellants directly in promissory fraud, and the aiding and abetting and negligent misrepresentation theories were legally untenable.

### B. Malice

The malice element of malicious prosecution goes to the defendant's subjective intent for instituting the prior case. (*Soukup*, *supra*, 39 Cal.4th at p. 292.) Malice does not require that the defendant harbor actual ill will toward the plaintiff in the malicious prosecution case, and liability attaches to attitudes that range '"from open hostility to indifference. [Citations.]"' (*Ibid*.) Malice may be inferred from circumstantial evidence,

10

such as the defendant's lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose, as when it was knowingly brought without probable cause or to force a settlement unrelated to its merits. (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225, 226, 228 (*Daniels*).) When the defendant is an attorney, his or her investigation and research are relevant to the issue of malice. (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 883.)

Appellants argue that respondents' indifference to the merits of the underlying case may be inferred from a combination of factors: respondents' apparent failure to speak to their own client to determine whether appellants committed fraud; respondents' failure to conduct discovery regarding the alleged fraud during their tenure on the case, and their failure to attend depositions, including Frymer's deposition; respondents' failure to research the viability of the legal claims against appellants; respondents' recasting of the breach of contract claim into a claim for promissory fraud after Wilshire's filing of its cross-complaint for construction defects, considered in light of the $18 million payment Wilshire received as part of the global settlement, which suggested that its defect claims were not "sham."

Respondents rely on *Daniels*, *supra*, 182 Cal.App.4th 204, 225, in arguing that lack of probable cause, by itself, is insufficient to establish malice, and so, by itself, is their failure to conduct factual or legal research. They also argue that Molnar's deposition testimony, which established that Frymer made no representations during the negotiation of the contract, came after respondents had left the case, and therefore cannot establish that they knowingly prosecuted it without probable cause. Respondents similarly dismiss the other factors on which appellants rely as irrelevant.

Respondents miss the point. *Grindle v. Lorbeer* (1987) 196 Cal.App.3d 1461, the case cited in *Daniels*, *supra*, 182 Cal.App.4th 204, 225, held that the attorney's prefiling legal research was adequate and his factual research not "so deficient as to raise an inference of malice as a matter of fact." (*Grindle v. Lorbeer*, at pp. 1466–1467.) The court distinguished that situation from the failure to conduct any prefiling research, which is what appellants argue occurred here. (*Id*. at p. 1467.) According to appellants,

11

respondents employed a "shotgun" approach to suing appellants without discussing the allegations with their client. (See *Sycamore Ridge Apartments, LLC v. Naumann*, *supra*, 157 Cal.App.4th at p. 1409.) They claim that had respondents actually talked to their client, they would have learned that Molnar negotiated the contract and that appellants made no representations during contract negotiations.

On appeal, respondents do not rely on information they received from their client, nor do they claim to have conducted any prefiling factual investigation or legal research, or to have propounded any discovery during their tenure on the case. While respondents are correct that promissory fraud is a viable cause of action and an agent may be directly liable for its own torts, they fail to acknowledge that an agent may not be held liable on a theory of aiding and abetting its principal, which was the main theory advanced against appellants in the Taisei complaint. They also fail to appreciate that a promissory fraud claim may not be based on evidence "of an unkept but honest promise, or mere subsequent failure of performance." (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183.) The conclusory allegations of "sham grounds" for nonpayment in the Taisei complaint do not plead fraud with sufficient particularity and do not suggest that respondents had evidence of actual fraud, as opposed to simple nonperformance, to support the request for exemplary damages in that complaint. Therefore, it is inferable that the recasting of the breach of contract claim against Wilshire as a promissory fraud claim against multiple defendants was done to increase the settlement value of the case, regardless of its actual merits.

On the record before us, we conclude that appellants have made a prima facie case of malice against respondents.

*C. Damages*

Respondents argue that appellants suffered no damages because of the payment Frymer Development received as a result of the global settlement. As the court observed in *Sycamore Ridge Apartments, LLC v. Naumann*, *supra*, 157 Cal.App.4th 1385, 1412, there is no authority that a malicious prosecution plaintiff must prove its damages in opposing an anti-SLAPP motion. Rather, damages may be presumed. (*Ibid.*, quoting

12

*Bertero v. National General Corp.*, *supra*, 13 Cal.3d at pp. 50–51 ["The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings"].)

In any event, appellants' attorney, who represented them in the prior lawsuit as well, has declared that the $180,000 appellants received under the global settlement had nothing to do with their defending against the Taisei complaint, which by then had been dismissed as to them, and that appellants incurred more than $180,000 in attorney fees in defending against that complaint. We also are unpersuaded that appellants will be "double dipping" since the collateral source rule provides that "'[p]ayments made to or benefits conferred on the injured party from other sources [(i.e., those unconnected to the defendant)] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.' (Rest.2d Torts, § 920A, subd. (2).)" (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 551.)

On the parties' respective showings on appeal, we conclude that appellants' malicious prosecution claim against respondents should not have been stricken under the anti-SLAPP statute because appellants made the requisite showing of probability of success on the merits, and respondents did not defeat that showing as a matter of law.[6]

---

[6] Because respondents did not prevail on the anti-SLAPP motion, they are not entitled to attorney fees under the anti-SLAPP statute. (See Code Civ. Proc., § 425.16, subd. (c)(1).)

13

## DISPOSITION

The order is reversed and the matter is remanded for further proceedings.

Appellants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


COLLINS, J.

14