Filed 12/6/22  Trujillo v. Trujillo CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHELE TRUJILLO, | B316216 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV07116) |
| v. | |
| KRISTINA TRUJILLO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed.

Howard M. Fields and Thomas H. Warden for Defendant and Appellant.

Rekte Law and Andre Rekte for Plaintiff and Respondent.

———————————

This appeal arises out of a contentious dispute between the widow and ex-wife of Victor Trujillo (Victor). After Victor's death, his widow, Kristina Trujillo (Kristina), sued his ex-wife, Michele Trujillo (Michele), to assert her right to the $350,000 portion of Victor's life insurance benefit that Michele claimed.[1] After a federal judge ruled that Michele was the rightful beneficiary, Michele sued Kristina for malicious prosecution, among other things. Kristina filed an anti-SLAPP motion (Code Civ. Proc. § 425.16, subd. (a))[2] to dismiss the lawsuit; her motion was granted for all claims excepting malicious prosecution.

Kristina now appeals from the partial denial of her anti-SLAPP motion, arguing that the trial court should not have allowed Michele's malicious prosecution suit to proceed because she could not make the necessary showing of potential success on the merits. We disagree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Victor's Divorce and Remarriage

Victor and Michele were married for 17 years. During the marriage, Victor worked for the Los Angeles County Sherriff's Department (LASD), and contributed to a retirement and pension fund administered by the Los Angeles County Employee's Retirement Association (LACERA). The couple had two children before separating in 2008. Their divorce was finalized in 2012.

---

[1] Because the persons involved in this case share surnames, we refer to Kristina, Michele, and Victor by their first names. No disrespect is intended.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

Among other things, the marital dissolution judgment dividing the couple's community property required Victor to maintain a life insurance policy payable to Michele. In pertinent part, the judgment order states that "[a]s additional . . . spousal support, and as security for future spousal support and the LACERA pension," Victor must maintain a life insurance policy "with a total death benefit of not less than $400,000," to be "reduced by $25,000 each year once [Victor's] spousal support obligation is reduced to zero,[3] however the total death benefit of the policy shall remain at $300,000 until such time as [Victor] retires or [Victor and Michele] commence receiving the retirement payments from LACERA, whichever shall first occur." The order clarified that "[o]nce [Victor] retires and [Michele] is eligible to recover retirement payments from LACERA [Victor's] obligation to maintain any life insurance shall terminate." The life insurance obligation would be "non-modifiable until [Victor] retired or the parties commenced receiving the retirement payments."

In 2014, Victor married Kristina.

## II.    The Insurance Policy and Victor's Death

In 2016, Metropolitan Life Insurance Company (MetLife) issued a life insurance policy to the LASD, including an individual policy certificate for Victor as an employee. The policy originally named Michele and Kristina as primary beneficiaries, which would entitle each of them to 50 percent of the policy's benefit upon Victor's death. On June 5, 2018, Victor made

---

[3]    Victor's spousal support obligations would terminate on the date of Michele's remarriage or August 1, 2016, whichever occurred first.

3

Kristina the primary beneficiary, to receive 60 percent of the benefit, and his two adult children as the secondary beneficiaries, with each receiving 20 percent of the benefit.

Victor died a few days later. At the time of his death, the MetLife insurance policy was worth $980,000.

## III. The Interpleader Action and Kristina's Cross-Claim Against Michele

After Victor's death, Kristina and his children filed claims with MetLife for their portion of the policy benefit per Victor's 2018 beneficiary designation. Michele also filed a claim for $350,000 pursuant to the terms of the 2012 dissolution judgment.

MetLife paid out the uncontested $630,000 portion of the policy pursuant to the 2018 beneficiary designation. It then filed an interpleader action in federal court to determine the disposition of the remaining $350,000, naming Michele, Kristina, and the children.

On January 4, 2019, Kristina asserted a cross-claim against Michele, arguing that she was entitled to a full 60 percent of the entire policy benefit.[4] Kristina did not dispute the applicability of Michele and Victor's dissolution judgment. Instead, she claimed that Victor had applied for retirement benefits prior to his death, thereby triggering one of the conditions that terminated Michele's entitlement to any portion of the policy benefit. Michele moved for summary judgment on the cross-claim.

---

[4] Kristina also asserted a cross-claim against the children, arguing that she should be entitled to their 40 percent of the benefit if the 2018 beneficiary designation were found invalid. No other party asserted cross-claims.

The district court granted summary judgment in Michele's favor, finding that neither of the two terminating conditions in the dissolution judgment—Victor's retirement or the receipt of retirement benefits—occurred before Victor died.

First, the district court found that Victor had not yet retired at the time of his death. It relied on a letter from LACERA verifying that Victor "passed away in active service" and "did not retire from service before passing away." It also noted that LACERA had sent several retirement verification forms to Kristina, dated as early as December 1, 2018, listing Victor's "effective date of retirement" as July 1, 2018—three weeks after his death. Kristina pointed to contradictory LACERA documents showing different dates of retirement, but she could not proffer any evidence showing a date of retirement before the day of his death.

Second, the district court found that neither Victor nor Michele received any retirement benefits prior to his death; in fact, the uncontradicted evidence showed that all of Michele's retirement distributions were issued after Victor's death.

The district court summarized that Victor "was in active service at the time of his death and that neither [he] nor Michele received retirement benefits before his death . . . . Accordingly, Michele is entitled to the contested funds under the terms of the Dissolution Judgment."

## IV. Michele's Suit for Malicious Prosecution and Kristina's Anti-SLAPP Motion

In February 2021, Michele sued Kristina for malicious prosecution, abuse of process, and intentional infliction of emotional distress.[5] With respect to her malicious prosecution claim, Michele argued that Kristina "acted maliciously and improperly" by filing a cross-claim in the interpleader action, as Kristina knew the terms of the dissolution judgment and "could not have reasonably believed that [Victor] had retired from his employment at the [LASD]"; therefore, Michele maintained that Kristina could not have believed that she had a good-faith claim to Michele's $350,000 portion of Victor's life insurance benefit.

Kristina then filed a motion to strike all of Michele's claims pursuant to California's anti-SLAPP statute (Code Civ. Proc. § 425.16, subd. (a)). Regarding the malicious prosecution claim, she argued that Michele could not demonstrate a probability of success on the merits "because the cross-claim was filed with probable cause, without malice and in reliance on counsel."

Michele opposed the motion. Her opposition included numerous evidentiary exhibits, including (1) a LACERA letter dated June 2018 addressed to Kristina and informing her that Victor's retirement application had not been considered until five days after his death; (2) an e-mail addressed to Kristina and a text message authored by her indicating that she understood the terms of the dissolution judgment related to Michele's entitlement to a portion of Victor's life insurance policy; and

---

[5] Michele also sued Kristina's attorneys for "[a]buse of [p]rocess." The trial court granted the attorneys' anti-SLAPP motion to strike those claims, which are not a part of this appeal.

(3) Kristina's written response to an e-mail Michele sent Victor shortly before his death about her entitlement to his life insurance and/or benefits, in which Kristina directed obscenities at Michele, said that Michele was "[s]till all about the money," and told her that her e-mail would be forwarded to Kristina's lawyer.

After taking the briefing under submission, the trial court issued a tentative ruling partially granting Kristina's anti-SLAPP motion. The court struck Michele's claims for abuse of process and intentional infliction of emotional distress, but allowed her to proceed on her malicious prosecution claim.[6]

In a seven-page written order, the trial court concluded that "the trier of fact could find that, at the time [Kristina] filed her cross-claim, she was aware that [Victor] had not retired prior to his death and that [Victor] was not receiving retirement benefits at the time of his death, thereby entitling [Michele] to receive the death benefit under [Victor's] life insurance policy." Therefore, Kristina "may have lacked probable cause to contest [Michele's] entitlement to $350,000 under the life insurance policy." The court further concluded that Kristina's counsel "may have been aware that [Kristina's] cross-claim lacked merit but elected to proceed," and that this bad faith could be imputed to Kristina as their client under "'general agency principles.'"

---

[6] After this hearing, Michele sought leave to amend her complaint to add Kristina's counsel as defendants to her malicious prosecution claim. The trial court denied her request because it had already granted the attorneys' anti-SLAPP motion, thereby terminating Michele's right to amend the complaint as to them. (See *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1074.)

7

Accordingly, the court ruled that Michele "demonstrate[d] 'minimal merit' and a probability of prevailing on the . . . cause of action for [m]alicious [p]rosecution."

On August 5, 2021, the trial court held a hearing on Kristina's anti-SLAPP motion. At the conclusion of the hearing, it entered its tentative ruling as its final order.

Kristina timely appealed.

## DISCUSSION

### I. Relevant Law and Standard of Review

#### A. *Standard of review*

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

#### B. *Anti-SLAPP*

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) "In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute." (*Ibid.*; see § 425.16, subd. (a).)

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." "Accordingly, a trial court tasked with

8

ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [she] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.)

"A claim has 'minimal merit' if it is "'both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment *if the evidence submitted by the [nonmoving party] is credited*." [Citations.]" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537 (*Gruber*).) Therefore, "when the trial court examines the plaintiff's [evidence] filed in support of [her] *second step* burden, the court must consider whether [she] has presented sufficient evidence to establish a prima facie case on [her] cause[] of action, and . . . when the trial court considers the defendant's opposing [evidence], the court cannot weigh [it] against the plaintiff's [evidence], but must only decide whether the defendant's [evidence], as a matter of law, defeat[s] the plaintiff's supporting evidence." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184.) An anti-SLAPP motion should only be granted if the plaintiff fails to meet this burden. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188–1189.)

C. *Malicious prosecution*

"To prevail on a claim for malicious prosecution, a plaintiff must establish that (1) the defendant initiated or maintained a prior action 'without probable cause,' (2) the defendant acted with 'malice' in doing so, and (3) the prior action was terminated in the

9

plaintiff's favor on the merits." (*Gruber, supra*, 48 Cal.App.5th at p. 537.)

An action lacks probable cause if "no reasonable attorney would believe that the action had any merit[.]" (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 926 (*Uzyel*).) "'A litigant will lack probable cause for his action either if [s]he relies upon facts which [s]he has no reasonable cause to believe to be true, or if [s]he seeks recovery upon a legal theory which is untenable under the facts known to h[er].'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).) "The probable cause determination is objective and is based on the facts known to the malicious prosecution defendant at the time the action was initiated or [maintained]. [Citation.] Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed. [Citation.]" (*Uzyel, supra*, at pp. 926–927, fn. omitted.)

A litigant acts with "malice" when she files suit due to "'ill will or some improper ulterior motive.'" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 224 (*Daniels*).) The question of malice looks to the "subjective intent or purpose with which the defendant acted in initiating the prior action." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874, 878.) The malice element "requires more than proof that the party acted without probable cause." (*Gruber, supra*, 48 Cal.App.5th at p. 538.) However, "malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels, supra*, 182 Cal.App.4th at p. 226.) "'Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as

10

initiating an action known to be baseless from the outset.' [Citation.]" (*Ibid*.)

The final element, prior termination, asks whether the prior action was terminated in the malicious prosecution plaintiff's favor in a manner that "reflect[s] . . . the plaintiff's innocence of the misconduct alleged" in the prior action. (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056.)

## II. Analysis

Michele's malicious prosecution claim indisputably falls within the ambit of the anti-SLAPP statute. (§ 425.16, subds. (b)(1), (e) [anti-SLAPP statute applies to claims "aris[ing] from" "any written . . . statement . . . made in connection with an issue under consideration or review by a . . . judicial body"]; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734 [holding that a malicious prosecution claim is predicated on the filing of a prior lawsuit].) Consequently, our decision will "depend[] solely on whether [Michele] proved that her malicious prosecution claim had minimal merit." (*Gruber, supra*, 48 Cal.App.5th at p. 539.)

Kristina does not contest that the action underlying Michele's malicious prosecution case—namely, Kristina's cross-claim in the interpleader action—was terminated in Michele's favor. We will therefore proceed to our analysis of the remaining two elements.

### A. *Probable cause*

In determining whether Michele met her burden of demonstrating minimal merit on the probable cause element, the relevant question is whether "the factual disputes regarding what [Kristina] knew when [she] filed the [crossclaim] are

11

resolved in [Michele's] favor, do these facts constitute a 'prima facie showing' that [Kristina] lacked probable cause to file [her] claim" to the contested $350,000 insurance benefit. (*Gruber*, *supra*, 48 Cal.5th at p. 540.)

We answer this question in the affirmative. Michele proffered evidence that Kristina knew that Michele was entitled to the contested portion of Victor's life insurance benefit unless Victor had retired or retirement benefits had been dispersed prior to his death. She also gave evidence that Michele knew that neither condition had occurred. If this evidence was credited, it would indicate that Kristina filed her crossclaim in "reli[ance] upon facts which [s]he ha[d] no reasonable cause to believe to be true" or "upon a legal theory which is untenable under the facts known to h[er]." (*Soukup*, *supra*, 39 Cal.4th at p. 292.)

Kristina argues that she is "immune from" malicious prosecution as a matter of law because she reasonably relied on her counsel's judgment when deciding to file her cross-claim. It is true that "[r]eliance upon the advice of counsel, in good faith and after full disclosure of the facts, customarily establishes probable cause." (*Brinkley v. Appleby* (1969) 276 Cal.App.2d 244, 246.) However, the issue of good faith reliance is itself a question of fact, to be determined by a factfinder after weighing the credibility of conflicting evidence.

Here, Michele presented evidence that Kristina knew (1) the relevant terms of the dissolution judgment and (2) that Victor had not retired or triggered the disbursement of any retirement benefits prior to his death. Were a factfinder to credit Michele's evidence, he could reasonably conclude that Kristina, armed with this knowledge, could not have relied *in good faith* on her attorneys' assessment that the crossclaim had probable

12

cause—especially if he simultaneously discredited Kristina's competing evidence of reasonable reliance.

In summation, "[a]bout this, all we need say is that issues concerning any advice-of-counsel defense by the . . . defendant[] must be sorted out at trial." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 828; see also *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 598 [holding that a defendant who failed to strike a malicious prosecution claim through anti-SLAPP should be able to pursue an "advice of counsel" defense on remand].)

B.     *Malice*

Similarly, we find that Michele satisfactorily demonstrated that the malice element of her claim has minimal merit. Michele presented evidence that (1) Kristina responded hostilely to Michele when she sent Victor an e-mail about her entitlement to insurance and retirement benefits, implying that litigation would follow; and (2) Kristina and her attorneys continued to prosecute the crossclaim despite repeated indications that the claim lacked probable cause (as outlined above).[7] A trier of fact could reasonably infer from this evidence that Kristina pursued her crossclaim with malicious intent.

Kristina raises three counterarguments against this conclusion. First, she attempts to attack the credibility of Michele's evidence, pointing to her own declaration that she did

---

[7]     Our conclusion does not express any opinion as to whether Michele is likely to prevail on this element; a trier of fact could reasonably conclude that this evidence does not indicate that Kristina filed her counterclaim with any malicious intent. But an anti-SLAPP plaintiff need not demonstrate that success is likely, only that it is possible. (See *Gruber, supra,* 48 Cal.App.5th at p. 537 [anti-SLAPP plaintiff need only establish "'minimal merit,'" not likely success].)

13

not act with malintent and diminishing the import of her hostile e-mail to Michele.  These arguments essentially ask us to resolve evidentiary conflicts in Kristina's favor and to weigh the credibility of Michele's evidence; given the constraints on judicial review of an anti-SLAPP motion, we must decline.  (*Gruber*, *supra*, 48 Cal.App.5th at p. 537 ["Because a court is to accept the nonmoving party's evidence as true, the court is not to "'weigh the credibility or comparative probative strength of competing evidence""'].)

Second, Kristina argues that the trial court impermissibly imputed her attorneys' potential malice to her, suggesting that such imputation "is contrary to California law."  This argument is irrelevant for the purposes of this appeal; on de novo review, we have identified evidence of Kristina's alleged malice separate from any intent imputed to her through her attorneys.  (*Johnson v. The Raytheon Co., Inc.* (2019) 33 Cal.App.5th 617, 627, fn. 9 ["As our review is de novo, we may affirm for reasons different from the trial court's reasons"].)

Lastly, Kristina repeats her argument that she is immunized from liability for malicious prosecution by her good faith reliance on her attorneys' guidance.  In return, we repeat our conclusion that this defense is a matter for future proceedings.

## DISPOSITION

The order is affirmed. Michele is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


15